Deborah A. Ferguson, ISB No. 5333
The Law Office of Deborah A. Ferguson, PLLC
202 N. 9th Street, Suite 401 C
Boise, Idaho 83702
Tel.: (208) 484-2253
d@fergusonlawmediation.com

Craig Harrison Durham, ISB No. 6428
Durham Law Office, PLLC
405 S. 8th Street, Ste. 372
Boise, ID 83702
Tel.: (208) 345-5183
craig@chdlawoffice.com

Shannon P. Minter
Christopher F. Stoll
National Center for Lesbian Rights
870 Market Street, Suite 370
San Francisco, California 94102
Tel.: (415) 392-6257
sminter@nclrights.org

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SUSAN LATTA and TRACI EHLERS, LORI WATSEN and SHARENE WATSEN, SHELIA ROBERTSON and ANDREA ALTMAYER, AMBER BEIERLE and RACHAEL ROBERTSON,<br><br>　　　　　　　　Plaintiffs,<br><br>　v.<br><br>C.L. "BUTCH" OTTER, as Governor of the State of Idaho, in his official capacity, and CHRISTOPHER RICH, as Recorder of Ada County, Idaho, in his official capacity,<br><br>　　　　　　　　Defendants. | Case No. 1:13-cv-00482-CWD<br><br>**PLAINTIFFS' OPPOSITION TO STATE OF IDAHO'S MOTION TO INTERVENE (DOCKET NO. 18).** |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

LEGAL STANDARD .........................................................................................2

ARGUMENT .......................................................................................................3

I.   THE STATE OF IDAHO'S INTERESTS IN THIS CASE ARE IDENTICAL TO THOSE OF THE STATE OFFICER DEFENDANTS, AND ARE ADEQUATELY REPRESENTED BY THEM .......................................................4

II.  THE STATE OF IDAHO'S INTERVENTION IN THIS CASE WILL CAUSE UNDUE DELAY AND PREJUDICE PLAINTIFFS ...............................7

III. THE CASES UPON WHICH THE STATE RELIES DO NOT SUPPORT PERMISSIVE INTERVENTION ...........................................................10

IV.  IF THE STATE OF IDAHO IS PERMITTED TO INTERVENE, ITS PARTICIPATION SHOULD BE STRICTLY LIMITED TO PREVENT PREJUDICE TO PLAINTIFFS ...............................................................12

CONCLUSION ...................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Arakaki v. Cayetano*,
 324 F.3d 1078 (9th Cir. 2003) ............................................................................................... 4, 5

*Chaffee v. Roger*,
 311 F. Supp. 2d 962 (D. Nev. 2004) ......................................................................................... 11

*Churchill Cnty. v. Babbitt*,
 150 F.3d 1072 (9th Cir. 1998) ................................................................................................... 13

*Coalition for a Sustainable Delta v. Carlson*,
 No. 1:08-CV-00397 OWW GSA, 2008 WL 2899724 (E.D. Cal. July 24, 2008) ........................ 12

*Hollingsworth v. Perry,*
 133 S. Ct. 2652 (2013) ................................................................................................................ 7

*League of Latin Am. Citizens v. Wilson*,
 131 F.3d 1297 (9th Cir. 1997) ................................................................................................. 4, 5

*Maine v. Taylor*,
 477 U.S. 131 (1986) .................................................................................................................. 11

*Massachusetts v. Microsoft Corp.*,
 373 F.3d 1199 (D.C. Cir. 2004) ............................................................................................. 9, 10

*Moosehead San. Dist. v. S.G. Phillips Corp.*,
 610 F.2d 49 (1st Cir. 1979) .......................................................................................................... 5

*Nuesse v. Camp*,
 385 F.2d 694 (D.C. Cir. 1967) ................................................................................................... 11

*Otani v. State Farm Fire & Cas. Co.*,
 927 F. Supp. 1330 (D. Haw. 1996) ............................................................................................ 11

*Pac. Coast Fed'n of Fishermen's Ass'ns v. Gutierrez*,
 No. 1:06-CV-00245 OWW GSA, 2008 WL 4104257 (E.D. Cal. Sept. 2, 2008) ........................ 12

*People of the State of California v. Tahoe Reg'l Planning Agency*,
 792 F.2d 775 (9th Cir. 1986) .................................................................................................. 4, 6

*Perry v. Proposition 8 Official Proponents*,
 587 F.3d 947 (9th Cir. 2009) ............................................................................................. 2, 3, 6

*Perry v. Schwarzenegger*,
 630 F.3d 898 (9th Cir. 2011) ............................................................................................... 10, 11

*Prete v. Bradbury*,
 438 F.3d 949 (9th Cir. 2006) .................................................................................................. 1, 5

*Southwest Center for Biological Diversity v. Berg*,
 268 F.3d 810 (9th Cir. 2001) ....................................................................................................... 5

*Spangler v. Pasadena City Bd. Of Educ.*,
  552 F.2d 1326 (9th Cir. 1977) ............................................................................ 2, 3, 4, 8

*Stadin v. Union Elec. Co.*,
  309 F.2d 912 (8th Cir. 1962) ..................................................................................... 9, 10

*Stringfellow v. Concerned Neighbors in Action*,
  480 U.S. 370 (1987) ........................................................................................................ 13

*U.S. ex. Rel. Richards v. De Leon Guerrero*,
  4 F.3d 749 (9th Cir. 1993) ............................................................................................... 6

*U.S. v. City of Los Angeles, Cal.*,
  288 F.3d 391 (9th Cir. 2002) ........................................................................................... 5

*Will v. Mich. Dep't of State Police*,
  491 U.S. 58 (1989) ............................................................................................................ 7

**Statutes**

28 U.S.C. § 2403(b) .............................................................................................................. 11
Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 2, 9
Fed. R. Civ. P. 24(a) ............................................................................................................ 12
Fed. R. Civ. P. 24(b)(1)(B) ................................................................................................... 3
Idaho Code Ann. § 67-1406(1) ......................................................................................... 1, 8
Idaho Code Ann. §§ 32-401, -403 ....................................................................................... 6

**Rules**

Idaho Const. art. IV, § 5 ........................................................................................................ 6
Idaho Const. art. XVIII, § 6 .................................................................................................. 6

**INTRODUCTION**

The State of Idaho ("the State") moves for permissive intervention in this action challenging the constitutionality of Idaho's laws excluding same-sex couples from marriage despite the fact that the named defendants, Governor C.L. "Butch" Otter and Christopher Rich, Recorder of Ada County, in their official capacities (the "State Officers"), are proper and adequate representatives of its interests. Idaho law expressly authorizes the Governor to retain counsel other than the Attorney General. *See* Idaho Code Ann. § 67-1406(1) ("The legislative and judicial branches of government and the governor may employ attorneys other than those under the supervision of the attorney general, and such attorneys may appear in any court."). Governor Otter has chosen to do so in this case, and it is the Governor appearing through his chosen counsel who therefore speaks for the State here. The State has not identified any interest that it has in this litigation that is distinct from the interests of the State Officers, nor has the State met its burden of demonstrating that the State Officers will fail to adequately represent its interests. The State cites no authority for the proposition that a State itself should be permitted to intervene in a Section 1983 lawsuit where state officials, including the Governor, are already involved in the case and are fully represented by their chosen legal counsel, and all of the relevant legal authority points strongly the other way. When the state officials responsible for administering a statute are defending it against constitutional challenge, it is strongly presumed that they will provide an adequate defense. The proposed intervenor must make "a very compelling showing" and offer "evidence sufficient to support a finding that their interests are not adequately represented by the defendant." *Prete v. Bradbury*, 438 F.3d 949, 957-59 (9th Cir. 2006) (citation omitted). Here, the State has not shown or even asserted that the existing State Officer Defendants will not adequately represent its interests.

Inserting an additional party into this case with interests identical to those of existing Defendants will prejudice Plaintiffs by causing complication and delay. Indeed, the State has already announced that it wishes to file a Fed. R. Civ. P. 12(b)(6) motion to dismiss. *See* State's Motion to Intervene, Docket 18-1 at 3, fn.2 (stating that if permitted to intervene, the State will "present its defenses through a Rule 12(b) motion to dismiss"). This interferes with the existing parties' plan to jointly propose to the Court that this case be resolved through dispositive cross-motions for summary judgment to be briefed and heard on a stipulated coordinated schedule.

Allowing the State to intervene will also prejudice Plaintiffs by giving Idaho multiple bites at the apple. If the State is allowed to intervene, Defendants will be able to file additional briefs requiring separate responses from Plaintiffs, despite the fact that the State Officers and the State have identical interests in the case. Moreover, if the State raises arguments that the State Officers have not, or that are contrary to the State Officers' arguments, Plaintiffs and this Court will be in the untenable position of trying to figure out which Defendant actually speaks for and binds the State. The State Officers and the State will also have the inequitable advantage of being permitted to adopt multiple and potentially contradictory positions, creating additional complexity, confusion, and delay. In the absence of any assertion or evidence that the representation of the existing State Officer Defendants is inadequate, Plaintiffs are entitled to insist that the State of Idaho speak with one voice in defending the challenged laws. If the Court nonetheless allows the State to intervene, such intervention should be strictly limited to minimize such potential prejudice and delay.

**LEGAL STANDARD**

A district court's discretion to deny a motion for permissive intervention is broad. *See Spangler v. Pasadena City Bd. Of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977); *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 956 (9th Cir. 2009) (upholding denial of permissive

intervention). The State moves under Fed. R. Civ. P. 24(b)(1)(B), which permits intervention by one who "has a claim or defense that shares with the main action a common question of law or fact," and Rule 24(b)(2), which enables a "federal or state governmental officer or agency to intervene if a party's claim or defense is based on (A) a statute or executive order administered by the officer or agency; or (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order." In addition to the threshold requirements set forth in those provisions, other factors relevant to the court's exercise of discretion include "the nature and extent of the intervenor['s] interest, . . . the legal position [it] seek[s] to advance, . . . . whether the intervenors' interests are adequately represented by other parties, . . . and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Spangler*, 552 F.2d at 1329. "Rule 24(b)(3) also *requires* that the court 'consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.'" *Perry*, 587 F.3d at 955 (emphasis added).

## ARGUMENT

The State's motion should be denied because the *Spangler* factors overwhelmingly countenance against intervention. The State's interests are identical to those of the State Officials, who already represent the State of Idaho in this matter, and are adequately represented by the existing Defendants. The State has not shown or even asserted that the State Officers will not adequately represent the interests of the State of Idaho, nor has the State identified any specific basis for its proposed intervention or any way that permitting intervention would benefit the litigation. None of the cases cited by the State involve the novel situation presented here, where high-ranking state officials are already parties to this lawsuit and have declined representation by

3

the Attorney General's office. Because the State's interests are identical to those of the existing State Officers, the State's addition to this case as an intervenor-defendant would prejudice Plaintiffs by adding unnecessary complication, duplication, and delay.

I. **THE STATE OF IDAHO'S INTERESTS IN THIS CASE ARE IDENTICAL TO THOSE OF THE STATE OFFICER DEFENDANTS, AND ARE ADEQUATELY REPRESENTED BY THEM**

In the permissive intervention context, just as in the mandatory intervention context, an important factor to be considered is "whether the intervenors' interests are adequately represented by other parties." *Spangler,* 522 F.3d at 1329. In evaluating whether the proposed intervenor's interests are adequately represented by the existing parties, courts considers three factors: (1) whether the interests of a present party are sufficiently similar to those of the proposed intervenor "such that [the party] will undoubtedly make all the intervenor's arguments"; (2) "whether the present party is capable and willing to make such arguments"; and (3) "whether the [proposed] intervenor would offer any necessary elements to the proceedings that other parties would neglect." *People of the State of California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778 (9th Cir. 1986). "The most important factor in determining the adequacy of representation is how the [proposed intervenor's] interest compares with the interests of existing parties." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (citation omitted) (affirming denial of intervention in civil rights case brought against defendant Governor of Hawaii and other state officers in their official capacities).

"When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *Id.* (citing *League of Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1305 (9th Cir. 1997) ("*LULAC*")). This presumption is particularly strong when the state officers charged with administering a statute are defending it against constitutional

challenge. The Ninth Circuit has repeatedly held that intervention is inappropriate unless there are specific facts indicating that the existing state defendants "cannot be count[ed] on . . . to argue vehemently in favor of the constitutionality" of the statute or otherwise to fully represent the interests of the intervenor. *LULAC,* 131 F.3d at 1306 (citation and internal quotation marks omitted); *see also Prete,* 438 F.3d at 957.

The presumption of adequacy can only be overcome by a "very compelling showing to the contrary" because it is presumed that the government defendants "adequately represent[] [their] citizens when the applicant shares the same interest." *Arakaki,* 324 F.3d at 1086 (citation omitted). "The prospective intervenor bears the burden of demonstrating that the existing parties do not adequately represent its interests." *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 822-23 (9th Cir. 2001) (citation omitted). To meet this burden, the prospective intervenor "must produce something more than speculation as to the purported inadequacy" of representation. *LULAC*, 131 F.3d at 1307 (quoting *Moosehead San. Dist. v. S.G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir. 1979)). For example, "differences in litigation strategy do not normally justify intervention." *Arakaki,* 324 F.3d at 1086; *see also U.S. v. City of Los Angeles, Cal.*, 288 F.3d 391, 402 (9th Cir. 2002) (reversing grant of intervention as of right and stating that "[a]ny differences [the parties and the intervenors] have are merely differences in strategy, which are not enough to justify intervention"). The proposed intervenor must offer "*evidence* sufficient to support a finding that their interests are not adequately represented by the defendant in [the] action." *Prete,* 438 F.3d at 959 (emphasis added). Here, the State has not even attempted to meet this burden.

The State has not argued, let alone demonstrated, that the nature or extent of its interest in this case is anything other than identical to that of Governor Otter and County Recorder Rich. The State simply asserts a general interest in defending the enforceability of its marriage laws. Yet that

5

is exactly what the State Officers will do. Under the Constitution and laws of Idaho, the Governor and County Recorders are charged with enforcing Idaho's marriage laws. "The supreme executive power of the state is vested in" Defendant Governor Otter, whose duty it is under the Idaho Constitution to "see that the laws are faithfully executed." Idaho Const. art. IV, § 5. Similarly, Idaho law vests in Defendant Rich, as a County Recorder, the "authority to issue marriage licenses." Idaho Code Ann. §§ 32-401, -403; *see also* Idaho Const. art. XVIII, § 6. Within the Ninth Circuit, this "identity of interests" between the State Officer Defendants and the State is a well-established reason to deny permissive intervention. *See Perry*, 587 F.3d at 955.

It is unclear whether the State intends to offer any arguments that the State Officers would not, because the State's sparse motion to intervene does not identify any specific legal or factual arguments it wishes to raise. Even if the State had done so, however, that would not be sufficient to warrant intervention, because a difference in legal strategy is not sufficient in the absence of specific facts indicating that the existing defendants may not adequately defend the challenged laws. The State Officers have not yet responded to the complaint. It would be inappropriate to assume that Governor Otter and County Recorder Rich are not "capable [of] and willing" to raise any relevant, non-frivolous argument available in defense of Idaho's marriage laws. *Tahoe Reg'l Planning Agency*, 792 F.2d at 778. Where movant's "argument is essentially the same as [that] presented by the Governor," permissive intervention is properly denied. *See U.S. ex. Rel. Richards v. De Leon Guerrero*, 4 F.3d 749, 756 (9th Cir. 1993) (affirming denial of permissive intervention).

The Attorney General is not moving for intervention on his own behalf and does not argue that he has responsibility for enforcing the challenged laws. Instead, it is the State that moves to intervene, and the Attorney General intends to serve as its counsel. The Attorney General does not identify the source of his authority to speak for the State as an entity when the state officials

responsible for administration of a challenged state law have been properly named as defendants and are actively defending the case.

It bears emphasis that the Eleventh Amendment prohibits the State from being sued in Federal Court by its citizens. *See Hans v. Louisiana*, 134 U.S. 1, 18-19 (1890). A State cannot, without its consent, be sued in a Circuit Court of the United States by one of its own citizens, upon a suggestion that the case is one that arises under the Constitution and laws of the United States. Therefore, if intervention under these highly unusual circumstances is granted, the State must waive its sovereign immunity in order to participate.

Further, the State is not a "person" who can be sued within the meaning of 42 U.S.C. § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Plaintiffs could not have properly sued the State under section 1983 for their claims, and instead were required to name appropriate State Officers as Defendants. *See*, *e.g.*, *Hale v. Arizona*, 993 F.2d 1387, 1398 (9th Cir. 1993). Therefore, it also bears emphasis that the State here seeks to intervene in a suit in which it could not have been named as a defendant.

The State quotes the Supreme Court's recent decision in *Hollingsworth v. Perry* for the proposition that the Attorney General should be permitted to intervene in this case because a State's agent designated to represent its interests "is typically the State's attorney general." 133 S. Ct. 2652, 2664 (2013). But that snippet has been stripped of its context. The entire quotation reads, "[t]o vindicate [its interests] . . . , a State must be able to designate agents to represent it in federal court. That agent is typically the State's attorney general. But state law may provide for other officials to speak for the State in federal court . . . ." *Id.* As previously noted, the officers charged with enforcement of the challenged laws are already present in the case and are defending

7

it; the Attorney General has not identified any reason the interests of the State itself differ from those officers' interests and are entitled to separate representation.

Idaho law expressly permits the Governor to choose counsel other than the Attorney General. *See* Idaho Code Ann. § 67-1406(1) ("The legislative and judicial branches of government and the governor may employ attorneys other than those under the supervision of the attorney general, and such attorneys may appear in any court."). Governor Otter has chosen to do so in this case, and it is the Governor appearing through his selected counsel who therefore speaks for the State here.[1] *See* Docket 14 at 2 (Notice of Appearance of Thomas C. Perry Counsel from the Office of the Governor, on behalf of Governor Otter). The Attorney General is seeking a voice in this lawsuit even though the highest executive official in the State of Idaho has chosen, as expressly permitted by statute, to use counsel other than the Attorney General. Permitting intervention under these circumstances would not only be unwarranted based on the factors set forth in *Spangler*, but would be in tension with the intention of the Idaho Legislature's intention that the Governor can choose his own counsel. This does not foreclose permitting intervention by the Attorney General in a case in which the Governor is not adequately representing the interests of the state; however, the Attorney General has made no argument here that the Governor is not adequately representing the State's interest. Absent some good reason, Plaintiffs should not be required to bear the burden of Defendants' decisions concerning their legal representation by being forced to respond to multiple duplicative briefs, motions, and discovery requests.

## II. THE STATE OF IDAHO'S INTERVENTION IN THIS CASE WILL CAUSE UNDUE DELAY AND PREJUDICE PLAINTIFFS

---

[1] The record is silent as to why the Governor has chosen not to use the Attorney General as counsel.

8

The participation of the State as an intervenor-defendant will inevitably result in "added complexity" and duplication. *Stadin v. Union Elec. Co.*, 309 F.2d 912, 920 (8th Cir. 1962) (upholding denial of permissive intervention and intervention as of right). These duplicative efforts "in themselves suggest delay," notwithstanding the timeliness of the State's motion, because "[a]dditional parties always take additional time . . . they are the source of additional questions, objections, briefs, arguments, motions and the like." *Id.* (internal quotations omitted); *see also Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1235 (D.C. Cir. 2004) ("The 'delay or prejudice' standard . . . captures all the possible drawbacks of piling on parties; the concomitant issue proliferation and confusion will result in delay as parties and courts expend resources trying to overcome the centrifugal forces springing from intervention, and prejudice will take the form not only of the extra cost but also of an increased risk of error.") (internal quotation omitted).

In addition to creating delay, intervention by the State would prejudice Plaintiffs. The State seeks intervention despite the fact that Governor Otter is already a defendant. As discussed above, Governor Otter is presumed to adequately represent his constituents' interests, which are identical to those of the State. Intervention would allow Idaho two shots at litigating this case: giving it double-briefing, the potential for more discovery requests (should discovery occur), and the opportunity to file burdensome and duplicative motions. The State has already announced that it wishes to file a Fed. R. Civ. P. 12(b)(6) motion to dismiss, *see* State's Motion to Intervene, Docket 18-1 at 3, n.2. This would add unnecessary complication and delay by interfering with the existing parties' plan to jointly propose to the Court that this case be resolved on a legal track through dispositive cross-motions for summary judgment to be briefed and heard on a single coordinated schedule. Further, all of the existing parties have consented to Chief Magistrate Judge Dale. See

Dockets 16, 20 and 23. If the State is permitted to intervene, it could withhold that consent, requiring reassignment to a district judge and potentially further delaying the case.

This duplicative representation of the State of Idaho's interests would be even more prejudicial to Plaintiffs in the event that the Governor and the State take different positions. In the event of contradictory stances, how are Plaintiffs, or the Court, to know by which the State of Idaho is bound? This potential for "clouding of the issues involved in the original causes of action" is to Plaintiffs' detriment and creates "an increased risk of error" for the Court. *See Stadin*, 309 F.2d at 920, *Microsoft*, 373 F.3d at 1235 (internal quotation omitted).

### III. THE CASES UPON WHICH THE STATE RELIES DO NOT SUPPORT PERMISSIVE INTERVENTION

None of the cases cited by the State involve the novel situation presented here, where high-ranking state officials are already parties to this lawsuit and have declined representation by the Attorney General's office. The State cites no authority for the proposition that a State itself should be permitted to intervene in a Section 1983 lawsuit where state officials, including the Governor, are already involved in the case and are fully represented by their chosen legal counsel. Moreover, the only relevant cases cited by the State weigh heavily against permitting intervention here.

In *Perry v. Schwarzenegger*, the Ninth Circuit upheld the district court's denial of a motion for permissive intervention brought by certain county officials. 630 F.3d 898, 906 (9th Cir. 2011) (also upholding denial of intervention as of right). In *Perry*, as in this case, a group of same-sex couples sued the Governor of their state in his official capacity, as well as other government officials, challenging the constitutionality of the state's laws excluding them from marriage. A California County, its Board of Supervisors, and a Deputy Clerk for the county moved for intervention pursuant to Rule 24. The Ninth Circuit held that their motion was properly denied because the government movants, like the State here, had not demonstrated that they had any "new

evidence or arguments to introduce into the case" that differed from those that would already be advanced by the existing defendant Governor and state officials. *Id.* at 906. *Perry* therefore counsels against permitting intervention here, where the State has identified no way in which its interests differ from those of the existing State Officer Defendants, no evidence or arguments that it wishes to present, and no reason to question the adequacy of the State Officers' representation.

*Nuesse v. Camp*, 385 F.2d 694 (D.C. Cir. 1967), another case cited by the State, also weighs against permitting intervention here. In *Nuesse*, a private bank in Wisconsin sued the United States Comptroller of the Currency, and the Commissioner of the Banks of the State of Wisconsin ("Commissioner") sought to intervene as a plaintiff. The District Court's denial of intervention was reversed because the state's interest differed from that of the plaintiff and was directly adverse to that of the existing defendant: "The interest that the state bank is suing to protect is its own commercial integrity, while the interest sought to be promoted by the Commissioner is the 'competitive equality' of national and state banks in general." *Id.* at 703. In *Nuesse*, not only was the interest of the state officer who sought intervention different from the private plaintiff, it was *in opposition to* the existing government defendant, who represented a *different* sovereignty's interests. Unlike in *Nuesse*, in which there was no existing party who could speak for the state, Idaho's interest in administering its marriage laws is already adequately represented by the proper State Officer defendants in this case.

The remaining cases cited by the State are inapposite. Some address intervention in criminal cases under the entirely different standard set by 28 U.S.C. § 2403(b). *See Maine v. Taylor*, 477 U.S. 131 (1986); *Chaffee v. Roger*, 311 F. Supp. 2d 962 (D. Nev. 2004)[2]; *Otani v. State Farm Fire & Cas. Co.*, 927 F. Supp. 1330 (D. Haw. 1996). The remainder do not involve

---

[2] In *Chaffee*, the attorney general was permitted to participate as an *amicus* rather than as a party.

11

intervention, but rather are simply cases in which an Attorney General is representing state Defendants under circumstances entirely different than those here, where the Governor has chosen to retain counsel other than the Attorney General and is already representing the State of Idaho's interests in this matter.

## IV. IF THE STATE OF IDAHO IS PERMITTED TO INTERVENE, ITS PARTICIPATION SHOULD BE STRICTLY LIMITED TO PREVENT PREJUDICE TO PLAINTIFFS

If the Court is inclined to permit the State's intervention over Plaintiffs' opposition, Plaintiffs request that the State's participation be strictly limited to prevent delay and ensure a fair and efficient proceeding for Plaintiffs, whose rights are violated each day that Idaho's laws exclude them from marriage. The Court maintains ample discretion to impose "appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings." Fed. R. Civ. P. 24(a) advisory committee's note (1966 amendments). Courts routinely condition intervenors' participation to fit the particular circumstances of a case. *See e.g.*, *Pac. Coast Fed'n of Fishermen's Ass'ns v. Gutierrez*, No. 1:06-CV-00245 OWW GSA, 2008 WL 4104257, at *7 (E.D. Cal. Sept. 2, 2008) (allowing intervention as of right provided that, to avoid delay, intervenors "will not be permitted to . . . duplicate briefing and/or testimony going forward," "will be limited to one expert witness," and "[t]heir participation will be strictly limited to [certain] issues"); *Coalition for a Sustainable Delta v. Carlson*, No. 1:08-CV-00397 OWW GSA, 2008 WL 2899724, *4 (E.D. Cal. July 24, 2008) (granting motion to intervene as of right "conditioned upon strictly limiting [intervenors'] participation to issues about which they can provide unique information and/or arguments" and noting that "[f]urther conditions" on briefing and "other measures to avoid duplication may be imposed at the case management conference").

Indeed, the Supreme Court has upheld strict limitations on an intervenor's participation.

In *Stringfellow v. Concerned Neighbors in Action*, the District Court granted permissive intervention with many limiting conditions, including that the intervenor "not file any motions or conduct its own discovery unless it first conferred with all the original parties and then obtained permission to go forward from at least one of these litigants." 480 U.S. 370, 373 (1987). The Supreme Court upheld the restrictions imposed in *Stringfellow* when it rejected the intervenor's argument that those restrictions functioned as an essential denial of intervention. *Id.* at 377-78; *see also Churchill Cnty. v. Babbitt*, 150 F.3d 1072, 1081 (9th Cir. 1998) (upholding grant of intervention "with the significant limitation that [the intervenor] could only participate in the remedial phase of the trial"), *amended and reh'g denied by,* 158 F.3d 491 (9th Cir. 1998).

If the State is permitted to intervene, Plaintiffs request the Court to carefully limit its intervention to avoid imposing additional unwarranted burdens on Plaintiffs, including precluding the State from filing its own motions, oppositions, or discovery requests, and from offering additional witnesses or evidence, without consent of the parties or leave of Court. Furthermore, Plaintiffs request that the State and the State Officers be required to file combined briefs in support of or in opposition to motions, within the page limitations for single briefs established by the local rules or any page limitations established by further order of the Court. To the extent the State is permitted time at oral argument, Plaintiffs request that the State be required to share argument time with the existing Defendants, and that Plaintiffs be given equivalent time to the existing Defendants and the State combined. These constraints will protect against delay and prejudice to Plaintiffs that would arise from the State and State Officers taking conflicting positions or doubling their briefing.

## CONCLUSION

For the above reasons, the motion to intervene should be denied. If the Court is inclined to grant intervention over Plaintiffs' objections, Plaintiffs request that the Court impose careful limitations on the State's participation to prevent undue delay and prejudice to the Plaintiffs.

DATED: December 24, 2013

Respectfully submitted,

_____/s/_____
Deborah A. Ferguson, ISB No. 5333
The Law Office of Deborah A. Ferguson, PLLC
202 N. 9th Street, Suite 401 C
Boise, Idaho 83702
Tel.: (208) 484-2253
d@fergusonlawmediation.com

Craig Harrison Durham, ISB No. 6428
Durham Law Office, PLLC
405 S. 8th Street, Ste. 372
Boise, ID 83702
Tel.: (208) 345-5183
craig@chdlawoffice.com

National Center for Lesbian Rights
Shannon P. Minter
Christopher F. Stoll
870 Market Street, Suite 370
San Francisco, California 94102
Tel.: (415) 392-6257
sminter@nclrights.org
cstoll@nclrights.org

**Attorneys for Plaintiffs**