Deborah A. Ferguson, ISB No. 5333
The Law Office of Deborah A. Ferguson, PLLC
202 N. 9th Street, Suite 401 C
Boise, Idaho 83702
Tel.: (208) 484-2253
d@fergusonlawmediation.com

Craig Harrison Durham, ISB No. 6428
Durham Law Office, PLLC
910 W. Main Street, Suite 328
Boise, ID 83702
Tel.: (208) 345-5183

Shannon P. Minter
Christopher F. Stoll
National Center for Lesbian Rights
870 Market Street, Suite 370
San Francisco, California 94102
Tel.:  (415) 392-6257
Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| SUSAN LATTA and TRACI EHLERS, LORI WATSEN and SHARENE WATSEN, SHELIA ROBERTSON and ANDREA ALTMAYER,  AMBER BEIERLE and RACHAEL ROBERTSON,<br><br>      Plaintiffs,<br><br> v.<br><br>C.L. "BUTCH" OTTER, as Governor of the State of Idaho, in his official capacity, and CHRISTOPHER RICH, as Recorder of Ada County, Idaho, in his official capacity,<br><br>      Defendants,<br> and<br><br>STATE OF IDAHO,<br><br>      Defendant-Intervenor. | Case No. 1:13-cv-00482-CWD<br><br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR REASONABLE ATTORNEYS' FEES AND EXPENSES THROUGH MAY 23, 2014** |

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR REASONABLE ATTORNEYS' FEES AND
EXPENSES THROUGH MAY 23, 2014 - 1

# INTRODUCTION

In this action brought under 42 U.S.C. § 1983, Plaintiffs have successfully challenged Idaho's constitutional and statutory prohibition on marriage for same sex couples. When Plaintiffs filed their Complaint, no federal court post-*United States v. Windsor*, 570 U.S. 12 (2013), had yet ruled on the merits of the novel and complex constitutional issues presented in this case. Counsel agreed to represent Plaintiffs without charging fees of any sort, and the risk that counsel might never be compensated for their time was high. The demands on the attorneys' time over several months proved to be immense, as the case proceeded on an expedited track and resulted in thousands of pages of legal filings in a short period of time. Ultimately, Plaintiffs prevailed on each claim in their Complaint, and this Court has permanently enjoined the State of Idaho "from enforcing Article III, § 28 of the Idaho Constitution, Idaho Code §§ 32-201 and 32-209, and any other laws or regulations to the extent they do not recognize same-sex marriages validly contracted outside Idaho or prohibit otherwise qualified same-sex couples from marrying in Idaho." (Dkt. 101, pp. 1-2.)

Given the high degree of skill, experience, willingness to accept risk, and dedication necessary to reach this very successful conclusion, Plaintiffs now move this Court to order Defendants to pay $467,843.08 for their reasonable attorneys' fees and expenses through May 23, 2014, pursuant to District of Idaho Local Civil Rules 54.1 and 54.2, and 42 U.S.C. § 1988.

# STANDARD OF LAW

In an action to enforce the provisions of 42 U.S.C. §1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . ." 42 U.S.C. 1988(b). A prevailing party under § 1983 is entitled to reasonable attorneys' fees unless special circumstances would render such an award unjust. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).

The court must begin by determining a "lodestar" amount, which is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Fee applicants have the burden of producing evidence to establish that their requested rates are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 980 (9th Cir. 2008). The relevant community is typically the forum in which the district court sits. *Id*. at 979.[1] Affidavits from the Plaintiffs' attorneys and other attorneys in the community are satisfactory evidence of the prevailing market rate. *United Steelworkers of America v. Phelps Dodge Corp*., 896 F.2d 403, 407 (9th Cir. 1990).

The court also has the discretion to adjust the amount based upon the factors set forth in *Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67 (9th Cir. 1975) (the "*Kerr* factors"), that have not already been subsumed in the lodestar calculation. *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1126 (9th Cir. 2008).[2]

The most critical factor in determining the reasonableness of a fee award is "the degree of success obtained." *See*, *e.g.*, *Farrar v. Hobby*, 506 U.S. 103, 114 (1992).

---

[1] Although NCLR attorneys could request San Francisco and Washington, D.C. billing rates for this case based on their expertise and experience, *see, e.g., Barjon v. Dalton*, 132 F.3d 496, 501-502 (9th Cir. 1997); *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992), they seek rates consistent with those in the Boise legal market. *See also* Declaration of Shannon P. Minter In Support of Plaintiffs' Motion for Reasonable Attorneys' Fees and Expenses Through May 23, 2014 ("Minter Dec.") at ¶¶ 21-22.

[2] The "*Kerr* factors" include: (1) the time and labor required of the attorneys, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other work by the attorney due to acceptance of the case, (5) the customary fee for similar cases, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount of money, or the value of the rights involved, and the results obtained, (9) the experience, reputation and ability of counsel, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr*, 526 F.2d at 70.

## ARGUMENT

This Court ruled in Plaintiffs' favor on all four claims raised in the Complaint and granted Plaintiffs all of the relief that they sought. There can be no dispute that Plaintiffs are the "prevailing party" under § 1988(b), and are entitled to an award of reasonable attorneys' fees and expenses. For the reasons that follow, all of the fees and expenses that they have requested are reasonable.

### A. Plaintiffs' "Lodestar" Calculation is Reasonable.

The Court must first calculate the lodestar amount by multiplying a reasonable hourly rate by the number of hours expended on the case.

#### 1. Hourly Rates

Plaintiffs have submitted the following rates for six attorneys who worked substantially on this case: Deborah A. Ferguson, $400 per hour; Shannon P. Minter, $400 per hour; Craig Durham, $325 per hour; Christopher Stoll, $325 per hour; Amy Whelan, $275 per hour, and Jaime Huling Delaye, $175 per hour (*See* Declaration of Deborah A. Ferguson in Support Plaintiffs' Motion for Reasonable Attorneys' Fees and Expenses Through May 23, 2014 ("Ferguson Dec."), at ¶ 21; Declaration of Craig H. Durham in Support of Plaintiffs' Motion for Reasonable Attorneys' Fees and Expenses Through May 23, 2014 ("Durham Dec."), at ¶ 15; Minter Dec., at ¶¶ 19, 21.) As shown below, each of these attorneys has unique skills, which created an efficient and complementary legal team that eliminated redundancy and maximized Plaintiffs' chances of success.

Deborah A. Ferguson, lead counsel, has developed extensive federal civil litigation experience over her 28-year career. For almost twenty-one years, she served as an Assistant United States Attorney, first in the Civil Division of the Northern District of Illinois (Chicago), from 1991-1995 and then in the District of Idaho from 1995-2012. (Ferguson Dec., at ¶¶ 3-4.)

During those two decades with the U.S. Department of Justice, she was lead counsel on hundreds of federal civil cases on behalf of a wide array of agencies and individuals, before the federal District Court of Idaho and the Northern District of Illinois, and on appeal before the Ninth and Seventh Circuit Courts of Appeals.  (*Id*.)  As lead counsel, she handled and tried a wide variety of complex federal civil litigation, such as constitutional torts, environmental challenges, medical malpractice defense and other torts.  (*Id*.)  In 2012, she left the U.S. Department of Justice to return to private practice and formed her own firm. Based on her extensive litigation experience, her practice concentrates on representing clients in civil litigation, and mediating litigated disputes. From November 2012 until June 2013, she was appointed to serve as a Special Master by a federal Senior District Judge in a complex international electronic discovery dispute that arose in a commercial litigation in the District of Idaho. (*Id*. at ¶ 4.)  Ms. Ferguson is also an active in the legal community in Idaho and have served as a member and/or officer of a number of professional organizations such as the Idaho State Bar (Past President 2011 and Bar Commissioner, 2008-2011), the Federal Bar Association—Idaho Chapter and a recipient of the Exemplary Service Award 2013, and the Idaho Academy of Leadership for Lawyers (Founding Chair of Steering Committee, 2011- current).  (*Id*. at ¶ 5.)  She is also the Idaho State Bar Delegate to the American Bar Association, and a Fellow of the American Bar Foundation. (*Id*.)

   Shannon Minter is the Legal Director of the National Center of Lesbian Rights (NCLR). Mr. Minter, who has over 20 years of legal experience, was lead counsel for same-sex couples in the landmark California marriage equality case, *In re Marriage Cases*, 183 P.3d 384 (2008), (Minter Dec., at ¶ 7.)  He was also counsel for Respondent-Intervenor in *Christian Legal Society v. Martinez*, 561 U.S. 661 (2010), which upheld student group policies that prohibited discrimination based on sexual orientation and gender identity, and rejected the argument that such polices violated a student group's rights to freedom of religion, association, and speech.

Mr. Minter has been recognized many times for his expertise.  In 2009, he was named California Lawyer of the Year by California Lawyer magazine, and in 2008 he received the Dan Bradley Award from the National Gay and Lesbian Bar Association for his work in the marriage cases.  (Exhibit A to Minter Dec., p. 5.)  In 2005, Mr. Minter was one of 18 people to receive the Ford Foundation's "Leadership for a Changing World" award.  (*Id*.)

Craig Durham has been an attorney for over 17 years, and he brought a wealth of research and writing experience, and, more specifically, civil rights expertise to Plaintiffs' team.  For the first six years after he graduated from law school, he was an appellate public defender, where he researched and wrote over 150 briefs and orally argued dozens of cases in the appellate courts of Kansas and Idaho.  (Durham Dec., ¶ 3.)  During that time, he also represented clients who had been sentenced to death, navigating the complicated and high stakes world of modern death penalty jurisprudence.  (*Id*. at ¶¶ 3-4.)  Between 2003 and 2013, he was a death penalty law clerk and a staff attorney with the Prisoner Litigation Unit at the United States District Court in Boise.  (*Id*. at ¶¶ 5-6.)  Prisoner cases make up about 25% to 33% of the District Court's total civil caseload from year-to-year, and the majority of the cases are brought 42 U.S.C. § 1983.  (*Id*. at ¶ 6.)  In his nearly ten years at the Court, Mr. Durham gained extensive experience in procedural and substantive civil rights law, and the bulk of his current private practice now involves plaintiff's side civil rights and related cases.

Christopher Stoll, Amy Whelan, and Jaime Huling Delaye, all of the NCLR, also brought significant experience to Plaintiffs' legal team.  Mr. Stoll, a Senior Staff Attorney at the NCLR, has practiced law for over 19 years since his graduation from Harvard Law School.  (Minter Dec., at ¶ 21.)  Before joining the NCLR, he worked in the litigation department at the international law firm of Heller Ehrman LLP.  (Exhibit D to Minter Dec., p.2.)  Ms. Whelan, also a Senior Staff Attorney, has been practicing since 2001, and she has been with the NCLR since

2011. (*Id*. at 5.) Before that, she worked at the San Francisco firm of Rosen, Bien & Galvan LLP, where she represented individuals, organizations, and classes of people in litigation before federal and state courts and administrative agencies, principally in the area of civil rights. (*Id*.) Ms. Huling Delaye has been an attorney for five years. (Minter Dec., ¶ 21.) She joined the NCLR in 2013 after clerking for Judges A. Wallace Tashima of the Ninth Circuit Court of Appeals and Richard Seeborg of the Northern District of California. (Exhibit D to Minter Dec., p. 8.)

In addition to this diverse and deep well of expertise, the requested hourly rates are also justified by the unique nature of this litigation and the risk that the attorneys might have worked hundreds of hours without compensation. The pool of attorneys willing to take such a risk is small, which supports a rate on the higher end of the range for the local community. Both Ms. Ferguson and Mr. Durham have recently opened law practices, and they took a significant risk when they agreed to represent the Plaintiffs. Further, they were required to turn aside other matters that could have generated fees for their new firms to concentrate on this case. (Ferguson Dec., ¶¶ 15-16; Durham Dec., ¶¶ 9-10.)

Plaintiffs' counsel have also supported their requested rates with the declarations of Debora Kristensen and Lauren Scholnick, highly respected attorneys who practice civil litigation in the local community. Both attorneys state that the hourly rates are reasonable in light of the risk involved and the skill necessary to successfully complete the case. (Declaration of Debora K. Kristensen in Support of Plaintiffs' Motion for Reasonable Attorneys' Fees and Expenses ("Kristensen Dec."); Declaration of Lauren I. Scholnick in Support of Plaintiffs' Motion for Reasonable Attorneys' Fees and Expenses ("Scholnick Dec.") As stated in the declaration of Ms. Kristensen, "[t]hese are not ordinary matters, and there is little encouragement for the private bar to prosecute these complex and demanding constitutional claims." (Kristensen Dec. ¶

8.) Further, "[m]ost Idaho attorneys or firms are simply unable to undertake a contingency fee case of this nature….". (Kristensen Dec. ¶ 10).

Moreover, the issues in this case were complex, the timeframe for litigation was short, and counsel worked hard to divide tasks so that their effort was not duplicative. Plaintiffs' counsel conducted much of their business during telephone conferences and through email, which served as a cost-effective means to divide tasks between the attorneys and staff while eliminating the need for expensive travel by out-of-state counsel.

The case also involved eight plaintiffs, each with unique backgrounds and life histories, multiplying exponentially the investigative, drafting, and communication efforts that were required. Defendants' choices and actions increased the workload. Initially, two governmental officials were named as defendants, but the Idaho Attorney General later sought, and was granted, permission to intervene on behalf of the State of Idaho. The State filed its own dispositive motion, a Motion to Dismiss, while the Governor filed a separate Motion for Summary Judgment. Idaho governmental officials were not speaking with one voice, adding a layer of complexity, and Plaintiffs were required to address assorted claims and arguments coming from different directions. The State and Defendant Rich were represented by three attorneys from the Attorney General's Office, and the Governor assigned two attorneys to the case, for a total of at least five attorneys on behalf of the defense.

Finally, Plaintiffs have exercised billing judgment, and all attorneys have excluded hours that could have been billed. (Ferguson Dec., ¶ 18; Durham Dec., ¶ 13; Minter Dec., ¶ 22.) For example, as lead counsel, Ms. Ferguson excluded all of her extensive pre-filing activity as well as additional billable time. (Ferguson Dec., ¶ 18). Many other individuals have worked on the case for whom Plaintiffs do not request an award of fees. Additional attorneys, paralegals, and support staff at the NCLR provided numerous hours of researching, drafting, cite-checking, and

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR REASONABLE ATTORNEYS' FEES AND EXPENSES THROUGH MAY 23, 2014 - 8

proofreading drafts in this case, and Plaintiffs do not seek payment for their time. (Minter Dec., ¶ 22.) Perhaps most notably, David Codell, the Constitutional Litigation Director at the NCLR, who was co-counsel in the successful California *Marriage Cases*, contributed many hours of his time for which Plaintiffs are not seeking any compensation. (*Id*.)

For support that the claimed rates are reasonable, this Court need look no further than its recent decision awarding attorneys' fees in *Community House, Inc., v. City of Boise*, et al., 1:05-cv-00283-CWD. While *Community House* involved successful claims under the Fair Housing Act (FHA), the case provides helpful guidance because the analysis for granting fees under the FHA is similar to § 1988.

In *Community House*, the Court awarded lead counsel, Howard Belodoff, $400 per hour for his work after 2009. (1:05-cv-00283-CWD, Dkt. 447, p. 13.) In doing so, the Court noted the length and complexity of the case, and the unlikelihood that other Boise attorneys would have taken the case. (*Id*.) The Court also relied on evidence from two respected local attorneys – Walter Sinclair and Thomas Banducci – to find that Mr. Belodoff's request was in line with similar litigation work in the Boise community for attorneys with comparable experience to Mr. Belodoff, who had been an attorney for 34 years. (Dkts. 393, 394.)

In many ways, the present case is similar in difficultly, complexity, and risk. Plaintiffs are members of a group that has been historically disadvantaged, and historically disadvantaged groups often need private "attorneys general" to vindicate their rights. This case involved complex constitutional issues that required a high level of skill and expertise to litigate, without clear federal precedent when it was filed. Ms. Ferguson's training, skill, and experience is comparable to Mr. Belodoff's; she has been a civil litigation attorney for 28 years and has been involved in hundreds of cases over that time. Similarly, Mr. Minter is a preeminent attorney in his field, having advocated for equal rights for gay, lesbian, and transgender people in civil cases

for 21 years.  Mr. Durham's and Mr. Stoll's experience is analogous to Vaughn Fisher in *Community House*.  The Court approved Mr. Fisher's rate of $325 per hour, which it found was within a reasonable range of $275 to $325 per hour for attorneys in the Boise area with at least 15 years of experience.  Ms. Whalen's 13 years, and Ms. Huling Delaye's 5 years, would support rates $275 and $175 per hour within the Boise area.

Indeed, this case could compel higher rates and fees than those permitted in *Community House*.  The expedited nature of this case put significant time constraints on counsel and while *Community House* undoubtedly was a major victory for the plaintiffs, the Court's decision in this case vindicates the constitutional rights of thousands of Idahoans whose relationships have heretofore been labeled as second class by the State.

Accordingly, the prevailing rate in the community for cases that pose a similar risk and require a similarly high degree of skill, experience, and dedication justifies the reasonableness of the rates that have been requested.

### 2. Number of Hours

The moving party also bears the burden of establishing the reasonableness of the hours claimed, and the party must carry that burden by submitting adequate documentation of those hours.  *See Hensley*, 461 U.S. at 437.  The Court should not grant a fee award for "hours that are excessive, redundant, or otherwise unnecessary." *Id*. at 433–34.

All of Plaintiffs' attorneys have stated under oath in their declarations that the hours claimed were reasonable and necessary to complete the tasks in the case at hand and were not expended on tasks unrelated to the case.  (Ferguson Dec., ¶ 18; Minter Dec., ¶¶ 22-23; Durham Dec., ¶¶ 14-15.)  They have also provided detailed time sheets to the Court to document the hours and the tasks that were completed.  *See id*.

As the Court is aware, the case involved the production of thousands of pages of legal filings on complex constitutional issues of first impression on an expedited basis (for example, the Governor filed a 79-page Memorandum in Support of his Motion for Summary Judgment that contained an appendix with over 1000 pages).  (Dkt. 57-2, 57-3.)  Plaintiffs' counsel have conscientiously avoided duplication of effort, and time constraints required counsel to divide and delegate tasks.  Phone conferences were absolutely necessary to accomplish this division of labor and confer and review, and, in the end, saved time and expense.  The NCLR excluded many hours, both for its staff and for the attorneys who are seeking fees here, reducing the fee amount significantly.  Likewise, Idaho counsel Deborah Ferguson and Craig Durham have also excluded time from their fee request.  (Ferguson Dec., ¶ 18; Durham Dec., ¶ 14.)

The hours claimed are not excessive, redundant, or otherwise unnecessary, and the Court should turn aside any contention by Defendants to the contrary.   As noted by Chief Judge Kozinski, "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

  **3.**  **Requested Lodestar**

The lodestar amount in this case is $463,480 ($282,480 for Ms. Ferguson, $131,470 for NCLR, and $49,530 for Mr. Durham).  There is a presumption that this is a reasonable fee, *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987), but the Court has the discretion, after applying "*Kerr* factors," to adjust the amount.  *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1126 (9th Cir. 2008).

Although many of the *Kerr* factors could support a request for an upward adjustment, Plaintiffs do not seek one.  According to Ms. Lauren Scholnick, "[a]warding multipliers under

these circumstances ensures meritorious cases will be brought to enforce important constitutional rights, despite the risk involved," and that the decision not to seek an enhancement in this case "further supports the reasonableness of the hourly rates requested." (Scholnick Dec., ¶ 12.)

The most important factor is the degree of success that the attorneys have obtained for their clients. *Farrar v. Hobby*, 506 U.S. 103, 114 (1992). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435. Defendants cannot dispute that counsel's efforts resulted in a very high level of success. The Court concluded that Idaho statutory and constitutional provisions deprived the married and unmarried Plaintiffs of their constitutional rights both under the Due Process Clause and the Equal Protection Clause. There were no claims lost or partial victories achieved.[3]

This is a landmark decision that fully vindicated Plaintiffs' critical constitutional rights, and it is in the vanguard of a wave of civil rights victories sweeping the country. Accordingly, Plaintiffs are entitled to fully recover the reasonable attorneys' fees that have been requested.

**B.    Summary of Fees**

| ATTORNEY | RATE | HOURS | AMOUNT |
|---|---|---|---|
| Deborah Ferguson | $400 | 706.2 | $282,480.00 |
| Shannon Minter | $400 | 119.3 | $47,720.00 |
| Craig Durham | $325 | 152.4 | $49,530.00 |
| Christopher Stoll | $325 | 139.9 | $45,467.50 |
| Amy Whelan | $275 | 82.7 | $22,742.50 |
| Jaime Huling Delaye | $175 | 88.8 | $15,540.00 |

---

[3] Although the Court did not credit Plaintiffs' argument that gender discrimination supported a heightened standard of review, that was a legal *theory* in support of a claim for relief – an equal protection violation – on which Plaintiffs *did* prevail.

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR REASONABLE ATTORNEYS' FEES AND EXPENSES THROUGH MAY 23, 2014 - 12

  **C.** **Plaintiffs Are Entitled To Costs**

  Plaintiffs are also entitled to an award of costs for expenses that would normally be billed to fee-paying clients.  42 U.S.C. § 1988 (b).  Plaintiffs' counsel have incurred a total of $4,363.08 in costs related to the case, as supported by the Declaration of Shannon P. Minter. (Exhibit B to Minter Dec., p. 9.)  The total amount of reasonable fees and costs requested is $467,843.08.

  Plaintiffs have attached to this Memorandum a three-page summary of the claimed fees and costs, divided among the three law offices representing the Plaintiffs.

  Respectfully submitted this 27th day of May, 2014.

            _____/s/_____
            Deborah A. Ferguson
            The Law Office of Deborah A. Ferguson, PLLC

            Craig Harrison Durham
            Durham Law Office, PLLC

            Shannon P. Minter
            Christopher F. Stoll
            National Center for Lesbian Rights

            Attorneys for Plaintiffs