LAWRENCE G. WASDEN
ATTORNEY GENERAL

STEVEN L. OLSEN
Chief of Civil Litigation Division

W. SCOTT ZANZIG, ISB # 9361
CLAY R. SMITH, ISB# 6385
Deputy Attorneys General
Civil Litigation Division
Office of the Attorney General
954 W. Jefferson Street, 2nd Floor
P. O. Box 83720
Boise, ID  83720-0010
Telephone:  (208) 334-2400
Fax:  (208) 854-8073
scott.zanzig@ag.idaho.gov
clay.smith@ag.idaho.gov

Attorneys for Defendant Christopher Rich
and Defendant-Intervenor State of Idaho

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| SUSAN LATTA and TRACI EHLERS, LORI WATSEN and SHARENE WATSEN, SHELIA ROBERTSON and ANDREA ALTMAYER, AMBER BEIERLE and RACHAEL ROBERTSON, | ) ) ) ) ) ) | Case No. 1:13-cv-00482-CWD **MEMORANDUM IN RESPONSE TO MOTION FOR ATTORNEYS' FEES (DKT. 113)** |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| C.L. "BUTCH" OTTER, as Governor of the State of Idaho, in his official capacity, and CHRISTOPHER RICH, as Recorder of Ada County, Idaho, in his official capacity, | ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| STATE OF IDAHO, | ) ) | |
| Defendant-Intervenor. | ) ) | |

MEMORANDUM IN RESPONSE TO MOTION FOR ATTORNEYS' FEES - 1

# I.

## INTRODUCTION

Defendant Christopher Rich and Defendant-Intervenor State of Idaho oppose plaintiffs'
request for an award of attorneys' fees under 42 U.S.C. § 1988 because: (1) the fees plaintiffs
seek are excessive; (2) plaintiffs have requested fees for work on issues unrelated to the merits of
their claim on which they did not succeed; (3) plaintiffs have failed to adequately document their
request; and (4) the hourly rates plaintiffs seek are improperly inflated.  Their fee recovery
should be reduced to $203,435 under the appropriate hourly rate identified below or,
alternatively, to $259,153 if plaintiffs' requested hourly rates are used.  Their expense request is
also excessive and should be reduced by $3,748.72 to $614.36.

# II.

## ARGUMENT

Plaintiffs filed this action in November 2013.  The case was resolved on summary
judgment six months later, in May 2014, without any discovery.  Despite the quick and efficient
resolution of the case, plaintiffs seek a huge award of attorneys' fees and expenses that exceeds
$467,000.  Four reasons require reduction of this shocking fee request.

First, plaintiffs' fee request is excessive.  The overall request is disproportionately large
given the short duration of the case and the limited tasks involved.  In addition, certain categories
of work performed appear unnecessary and duplicative.  For example, hundreds of hours of
communications among plaintiffs' counsel account for a large share of the requested fees.
Plaintiffs also seek a whopping 663 hours, and more than $236,000, for work related to the
cross-motions for summary judgment and motion to dismiss.  And simply for preparing their fee
request, they seek more than $25,000.

Second, plaintiffs have included in their request approximately $30,000 of fees incurred
unsuccessfully (and needlessly) opposing a motion unrelated to the merits of their claims and a
motion that was not even before this Court.  As to the first motion, they seek $20,000 for efforts
opposing the State of Idaho's motion to intervene and, as to the second, nearly $10,000 for their

MEMORANDUM IN RESPONSE TO MOTION FOR ATTORNEYS' FEES - 2

efforts *in the Ninth Circuit* opposing defendants' successful motions for an emergency stay pending appeal.

Third, plaintiffs have not met their burden of adequately documenting their request. The summaries of counsels' time records are full of block-billed entries that prevent a meaningful review of the reasonableness of time spent on particular activities.

Fourth, plaintiffs have improperly inflated their attorneys' billing rates. For example, plaintiffs' lead counsel admits that she normally charges $250 to $300 per hour for her services, but she seeks an award of $400 for her work on this case.

A.    **Fee Award Standards**

Under 42 U.S.C. § 1988, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." *Id.* § 1988(b). Courts use the lodestar method to determine a reasonable fee. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Under the lodestar method, "a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* "A 'strong presumption' exists that the lodestar figure represents a 'reasonable' fee, and upward adjustments of the lodestar are proper only in 'rare' and 'exceptional' cases." *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987) (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)).[1]

"In setting a reasonable attorney's fee, the district court should make specific findings as to the rate and hours it has determined to be reasonable." *Gracie v. Gracie*, 217 F.3d 1060, 1070 (9th Cir. 2000) (quoting *Frank Music Corp. v. Metro-Goldwyn Mayer Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989)). The fee applicant bears the burden of establishing that the hours it claims are

---

[1] A court may adjust the lodestar figure based upon the factors set forth in *Kerr v. Screen Actors Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), not subsumed within the lodestar calculation. *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1126 (9th Cir. 2008). A fee applicant bears the burden of proving that a fee enhancement is necessary, and must produce "specific evidence" supporting an enhanced award. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010). Plaintiffs are not seeking such an adjustment. Dkt. 113-1 at 11.

reasonable and must submit adequate documentation of those hours. *Hensley*, 461 U.S. at 437.
Courts should exclude from their lodestar calculations "hours that are excessive, redundant, or
otherwise unnecessary." *Id.* at 433-34. Fee-reviewing trial courts, moreover, "need not, and
indeed should not, become green-eyeshade accountants" and thus "may take into account their
overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."
*Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011).

"A district court should calculate [the] reasonable hourly rate according to the prevailing
market rates in the relevant community, which typically is the community in which the district
court sits." *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995)
(internal quotes and citations omitted). "[T]he burden is on the fee applicant to produce
satisfactory evidence in addition to the attorney's own affidavits that the requested rates are in
line with those prevailing in the community for similar services by lawyers of reasonably
comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

In setting its award of reasonable attorneys' fees, the court should keep in mind that the
purpose of section 1988 is "not to provide 'a form of economic relief to improve the financial lot
of attorneys.'" *Perdue*, 559 U.S. at 552 (quoting *Delaware Valley*, 478 U.S. at 565). Fee awards
should "'not produce windfalls to attorneys.'" *Id.* at 552 (quoting *Blum*, 465 U.S. at 897).

### B.  Plaintiffs' Fee Request is Excessive

A court may reduce fees if it finds them to be duplicative or excessive. *Chalmers v. City
of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). Attorney fees, in other words, should bear
a reasonable relationship to the litigation's overall legal and factual complexity. Where little or
no factual controversy exists and where the parties trod well-worn legal paths, reinvention of the
wheel is unnecessary. The litigants instead largely recycle prior arguments in the hopes of a
similar (for the previously successful) or a contrary (for the previously unsuccessful) result.
Such is the situation here.

While a fee approaching half a million dollars might be reasonable in a complex case
requiring extensive discovery and a trial, this case is different. It was filed last November and

was resolved in May 2014 on summary judgment. There were no depositions or any other discovery. There was no evidentiary hearing. The only significant legal work necessary to resolve the case was some briefing on intervention and summary judgment motions and two court appearances totaling approximately 2.5 hours. Needless to say, the issues in this case are not unique. Similar cases abound, with publicly available briefing and court opinions— including three issued prior to commencement of briefing in this matter. *Kitchen v. Herbert*, 961 F. Supp. 2d 1181 (D. Utah 2013), *aff'd*, No. 13-4178, 2014 WL 2868044 (10th Cir. June 25, 2014); *Obergefell v. Wymyslo*, 962 F. Supp. 2d 968 (S.D. Ohio 2013); *Bishop v. United States ex rel. Holder*, 962 F. Supp. 2d 1252 (N.D. Okla.), *rev'd on jurisdictional grounds*, 333 F. App'x 361 (10th Cir. 2014). The NCLR has worked on other same-sex marriage cases in Utah and Tennessee.[2] That experience should have made plaintiffs' briefing more efficient in this case.

Given its enormous size, it is not surprising that plaintiffs' request is excessive or duplicative in a number of specific areas:

> **1. Plaintiffs seek an award for excessive attorney conferences and communications**

A large portion of the requested fees are attributable to numerous communications among plaintiffs' multiple lawyers. The lawyers' practice of block billing makes a precise calculation of the hours and fees requested for attorney communications impossible, but the records do reveal some details about the large volume of fees requested for attorney conferences.

Some of counsels' time entries are not block billed. Those entries include 177.5 hours (and $64,555 in fees) for communications among counsel.[3]

In addition, counsels' time records reflect 171 block-billed[4] entries that mix counsel-to-counsel communications with other activities. Those block-billed entries total 450.1 hours (and

---

[2] *See* Dkt. 113-7 ¶ 13.

[3] *See* Declaration of W. Scott Zanzig ("Zanzig Decl."), Ex. A (Dkt. 119-1).

[4] Block billing is the practice of lumping together multiple tasks under one time entry, rather than itemizing each task. Block billing makes it "'impossible to evaluate [the] reasonableness'" of the

MEMORANDUM IN RESPONSE TO MOTION FOR ATTORNEYS' FEES - 5

$165,177.50 in fees).[5]  The inadequacy of plaintiffs' documentation prevents a determination of the amount of block-billed hours and fees attributable to attorney conferencing, but it appears a substantial portion of the hours and fees fall into this category.[6]  Even if only one-third of the block-billed time is attributable to counsels' communications with one another, that adds another 150 hours (and an additional $55,000 in fees), bringing the total request for attorney conferencing to more than 327 hours and more than $120,000 in fees (more than 25% of the total fee request).  This amount of duplicated effort is excessive by any standard.

The Supreme Court has instructed that "'[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.'"  *Hensley*, 461 U.S. at 434 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980)).  It is unlikely any client would willingly pay his lawyers the amount plaintiffs seek to compensate the lawyers for talking to one another.  Where, as here, *six* attorneys staff a case presenting in large measure only legal issues, the observation in *Lee v. Krystal Co.*, 918 F. Supp. 2d 1261 (S.D. Ala. 2013), merits repeating: "With so many cooks making the broth, the need for internal conferences to keep everyone on the same recipe rises dramatically and undermines the reasonableness of those billings." *Id.* at 1270.   The most effective antidote to this overstaffing is to allow fee recovery only for one attorney's time.  *See Taylor v. Albina Cmty. Bank*, No. CV-00-1089-ST, 2002 WL 31973738, at *4 (D. Or. Oct. 2, 2002) ("[w]hen attorneys hold a telephone or personal conference with another attorney or paralegal, good 'billing judgment' mandates that only one participant in the conference should bill that conference to the client"); *accord Asia Pac. Agric. and Forestry Co. v. Sester Farms, Inc.*, No. 3:12-CV-00936-PK, 2013 WL 6157263, at *4 (D. Or. Nov. 22, 2013).  The amount plaintiffs seek for attorney communications thus

---

requested hours in a fee application.  *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (quoting *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004)).

[5]  *See* Zanzig Decl., Ex. B (Dkt. 119-1).

[6]  For example, Ms. Ferguson's entry for December 2, 2013 mixes a "conferred with co-counsel" with other activities, for a total of 1.2 hours.  By comparing Mr. Durham's entry that same day, it appears that 1.0 of Ms. Ferguson's 1.2 block-billed hours is attributable to attorney conferencing.

should be reduced substantially.  A reasonable response to counsels' excessive conferencing is to reduce the inter-attorney consultation time by half (to 163.5 hours) and to award $60,000 in fees (at requested hourly rates).

> **2.      Plaintiffs' request for work on the dispositive motions is excessive**

Another area of concern is the amount of time and fees requested for work on the motion to dismiss and summary judgment motions.  Plaintiffs suggest that due to "NCLR's long experience" with the issues in this case, they were able to litigate the case "efficiently." Dkt. 113-7 ¶ 15.  But that efficiency is not apparent from counsels' billing records.  Many of counsels' time entries relate exclusively to work on the dispositive motions.  Those entries total 663.9 hours (and $236,162.50 in fees).[7]  Few, if any, *paying* clients would view a bill of that size solely for briefing and arguing a summary judgment as efficient, much less reasonable.

Plaintiffs seek an award of 309.5 attorney hours ($109,002.50), covering the period November 16, 2013 through February 18, 2014, just for work preparing their summary judgment motion.[8]  This request is unreasonably large, particularly given counsels' experience with the issues in this case.  Substantial reductions of requested hours are appropriate where counsel are able to "recycle" their work from other cases.  *See, e.g., Welch*, 480 F.3d at 950 (approving 69% reduction of requested hours on fee application).  Plaintiffs' counsel were able to do that here, incorporating earlier briefing from the NCLR's other same-sex marriage cases.  For example, much of the amicus brief that the NCLR filed in December 2013 in the Utah case[9] is strikingly similar, if not identical, to portions of plaintiffs' memorandum in support of their summary judgment motion.[10]

For the period February 19, 2014 through April 4, 2014, plaintiffs seek an award of 212.8 attorney hours ($76,050) for work relating to their 38-page response to Governor Otter's motion

---

[7] *See* Zanzig Decl., Ex. C (Dkt. 119-1).
[8] *See* Zanzig Decl., Ex. D (Dkt. 119-1).
[9] *See* Zanzig Decl., Ex. N (Dkt. 119-1).
[10] For example, compare pages 9 through 15 of the Utah brief to pages 54 through 58 of plaintiffs' memorandum in support of their summary judgment motion (Dkt. 59).

for summary judgment (Dkt. 76) and for the 13-page reply (Dkt. 88) to the Governor's response to their summary judgment motion.[11]   All briefing on the dispositive motions was completed on April 4, 2014.

The aggregate time for summary judgment briefing thus was 522.3 hours—or more than three *months* of a single attorney's work time if billing 40 hours per week.  Even if one ignores the largely derivative nature of plaintiffs' opening brief, that amount of time for three memorandums of law and related documents suggests a group of attorneys litigating a case on the assumption that, at the end of the day, their fees would be off-loaded to a deep-pocketed group of governmental defendants, not a real paying client.  A 25% reduction of the hours—*i.e.*, 130 hours—would constitute an appropriate exercise of this Court's discretion and reduce the amount claimed by $46,263 to $138,789.50 (at the requested hourly rates).

The billing excess did not end with paper side of the motion process.  For the period between April 4 and the summary judgment hearing on May 5, plaintiffs seek an award of 137.6 attorney hours ($50,007.50) to prepare for and attend the hearing (including two NCLR lawyers who did not argue and just as profitably (except for fee purposes) could have listened by telephone).[12]   The ratio of those hours to the length of Ms. Ferguson's actual argument— approximately 45 minutes—is 183.5 to 1.  That ratio qualifies as unreasonable under any metric. *See Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001) (awarding 24 hours of preparation and two hours of attendance time for one-hour oral argument—and not the 169.35 hours requested; "[a] reasonable fee for hours spent preparing for a legal argument should be limited to hours reasonably necessary for a lawyer to become familiarized with the facts and the law pertaining to the issue to be argued, an analysis of the opponent's argument, and questions anticipated to be posed by the court"); *accord Hash v. United States*, No. 1:99-cv-00324-MHW, 2012 WL 1252624, at *15 (D. Idaho Apr. 13, 2012).  An extremely generous award under

---

[11]   *See* Zanzig Decl., Ex. E (Dkt. 119-1).
[12]   *See* Zanzig Decl., Ex. F (Dkt. 119-1).

§ 1988 would compensate *all* counsel for oral argument preparation and attendance in the amount of 40 hours at Ms. Ferguson's rate: $16,000 (at the requested hourly rate).

### 3.   Plaintiffs' request for work on their fee application is excessive

Also troubling is the size of the request for fees-on-fees (*i.e.*, preparation of the fee application).  At least one court has decried the practice of excessive time spent on fee applications as "the tail wagging the dog, with a vengeance."  *Ustrak v. Fairman*, 851 F.2d 983, 987 (7th Cir. 1988).  In *Welch*, the Ninth Circuit affirmed the district court's order determining that 13 hours for preparing a fee application was excessive and awarding four hours for the task. 480 F.3d at 950.  The court noted that plaintiffs' counsel were experienced lawyers who were able to "recycle" prior fee applications.  *Id*.

Here, plaintiffs had a team of six experienced lawyers, yet they seek to recover 77.5 hours of attorney time—six percent of the total hours for which compensation is sought—valued at $25,712.50 simply for preparing their fee application.[13]  Drilling down into these hours, one sees that (1) Ms. Whelan devoted 31.1 hours directed principally to preparation of Mr. Minter's declaration;  (2) Ms. Ferguson devoted 28 hours, including 13 hours to review of time records, preparation of her declaration, and review of the other declarations and 13.2 in telephone calls or meetings with co-counsel; and (3) Mr. Durham devoted 19 hours to the fee motion, including 16.5 hours to prepare his declaration and the memorandum supporting the attendant motion.  It is difficult to fathom spending almost two 40-hour weeks on preparing the motion, memorandum, and five declarations.  The relevant decisional standards are settled and, in view of the NCLR's extensive involvement in 42 U.S.C. § 1983 litigation (Dkt. 113-7 ¶¶ 7-12), the § 1988 motion undoubtedly had been briefed in myriad prior cases; the time records were presumably capable of being generated with a mouse click or keystroke; and declarations themselves posed no particular challenge for an experienced attorney to draft quite quickly.  There was thus no reason for Mr. Durham to have expended over 14 hours to research and draft the supporting

---

[13] *See* Zanzig Decl., Ex. G (Dkt. 119-1).

memorandum; he had access, or should have access, to similar briefs submitted by the NCLR (if not by Ms. Ferguson).  It seems as if plaintiffs simply used the fee and expense motion as an opportunity to educate Mr. Durham.  Nothing precluded them from choosing that otherwise inefficient course, but they may not do so at defendants' expense.  No less extreme is the number of hours directed to the other declarations' preparation or the two eight-hour days consumed with attorneys talking about the motion.  This request is palpably excessive and should be reduced to 18.5 hours—*i.e.*, 5 hours for preparation of the motion and supporting memorandum; 2.5 hours for each of the supporting declarations; and one hour for inter-attorney conferencing.  That reduction—approximately 76%—modifies the associated fee recovery to $6,138 (at the requested hourly rates).

### C.     Plaintiffs are not Entitled to Fees for Their Unsuccessful Efforts Unrelated to the Merits of Their Claims

Plaintiffs seek an award of fees not only for their work on the merits of their claims, but also on procedural motions which they lost.  The motions are the State of Idaho's motion to intervene, which this Court granted (Dkt. 38); and defendants' emergency motions for a stay of this Court's judgment pending appeal, which the Ninth Circuit granted (Dkt. 112).  These motions were unrelated to plaintiffs' successful claims, so plaintiffs should not be awarded fees for their unsuccessful efforts to oppose the motions.

A plaintiff is not entitled to an award of fees for unsuccessful claims that are "unrelated to" her successful claims.  *Hensley*, 461 U.S. at 434.  Claims are "unrelated" if they are "entirely distinct and separate" from the claims on which the plaintiff prevailed.  *Webb v. Sloan*, 330 F.3d 1158, 1168-69 (9th Cir. 2003).

### 1.     Plaintiffs are not entitled to fees for their unsuccessful opposition to the State of Idaho's motion to intervene

Some of counsels' time entries relate exclusively to work opposing the State of Idaho's motion to intervene.  Those entries total 60.7 hours (and $18,675 in fees).[14]  In addition,

---

[14] *See* Zanzig Decl., Ex. H (Dkt. 119-1).

counsels' records contain a number of block-billed entries that mix work on the intervention motion with other activities.  Those block-billed entries total 13.7 hours (and $4,962.50 in fees).[15]

Plaintiffs' opposition to Idaho's motion to intervene was unsuccessful.  Their counsels' work on this procedural motion was entirely unrelated to the merits of their claims.  The legal issues on the motion to intervene were completely different from the constitutional issues comprising the merits of plaintiffs' claims.  The requested fees related exclusively to intervention--$18,675 (at the requested hourly rates)—should be denied in their entirety.

> **2.     Plaintiffs are not entitled to fees for their unsuccessful opposition to defendants' stay motions in the Ninth Circuit**

Some of counsels' time entries relate exclusively to work opposing defendants' motions in the Ninth Circuit seeking a stay of this Court's judgment pending appeal.  Those entries total 28.3 hours (and $9,550 in fees).[16]  These fees are not recoverable in this motion because plaintiffs incurred them on appeal, and not in proceedings before this Court.  Their recovery is subject to Ninth Circuit Rule 39-1.6.  Even were this aspect of plaintiffs' fee request properly before the Court, their opposition was unsuccessful.  The requested fees related to the stay motions--$9,550 (at the requested hourly rates)—should be denied.

> **D.     Plaintiffs Have Failed to Adequately Document Their Request**

If the fee applicant's documentation of hours is inadequate, the district court should reduce the award accordingly.  *Hensley*, 461 U.S. at 433.  One form of inadequate documentation attorneys sometimes submit with fee applications is block-billed time records.  Block billing is the practice of lumping together multiple tasks under one time entry, rather than itemizing each task.

In *Welch*, the Ninth Circuit held that a district court properly reduced all block-billed time entries by 20 percent.  The court explained that the applicant "failed to carry her burden" of

---

[15] *See* Zanzig Decl., Ex. I (Dkt. 119-1).
[16] *See* Zanzig Decl., Ex. J (Dkt. 119-1).

proving the reasonable hours her attorneys spent on the case, "because block billing makes it more difficult to determine how much time was spent on particular activities." *Id.* at 948 (citing *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004), and *Hensley*, 461 U.S. at 437). The practice of lumping multiple tasks together makes it "'impossible to evaluate their reasonableness.'" *Welch*, 480 F.3d at 948 (quoting *Role Models*, 353 F.3d at 971). More recently, in *Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216 (9th Cir. 2010), the Ninth Circuit held that the district court acted within its discretion by reducing block-billed fees by 30 percent. *Id.* at 1222-23. That standard, based upon a California State Bar study estimating the inflated-hours' effect of block billing, has been used as a general standard within and without this Circuit. *See, e.g.*, *Bramlett v. Med. Protective Co.*, No. 3:09-CV-1596-D, 2010 WL 3294248, at *3 (N.D. Tex. Aug. 20, 2010). Other Circuits have approved comparable percentage reductions. *See Green v. City of New York*, 403 F. App'x 626, 630 (2d Cir. 2010) (summary order) (15% reduction not abuse of discretion). In sum, plaintiffs' extensive use of block billing not only materially hinders the ability to assess the reasonableness of time assigned to identified services but also undermines confidence in the very accuracy of hours claimed.

The time records of plaintiffs' attorneys are full of inadequate, block-billed time entries. No fewer than 239 of counsels' entries are block billed.[17] These entries account for 649.6 (approximately half) of the 1,289.3 hours of attorney time for which plaintiffs seek payment. The fees associated with the block-billed entries total $235,727.50, more than 50% of the fees plaintiffs request. As in *Welch* and *Lahiri*, this Court should substantially reduce all block-billed fees requested by plaintiffs. The extensive use by plaintiffs' counsel of this billing practice, given the settled status of decisional authority to the contrary, warrants a very substantial reduction.

A reduction of the block-billed hours by 20 to 25 % would be appropriate under the circumstances here. Alternatively (and in light of the significant percentage of block billed

---

[17] *See* Zanzig Decl., Ex. K (Dkt. 119-1).

entries), the Court could direct plaintiffs' counsel to produce more itemized time records that may have been used to generate the block-billed entries.  *See Robinson v. City of Edmond*, 160 F.3d 1275, 1285 (10th Cir. 1998).  If plaintiffs cannot produce such records, defendants Rich and Idaho suggest the following reduction of the plaintiffs' fee recovery as a reasonable method for addressing the inflationary impact of block billing—an impact not be captured in the Part II.B analysis that assumed the accuracy of the time claimed.  Nearly 70 percent of the block-billed time (450.1 of the 649.6 hours) relates to attorney conferencing.  If the Court makes the reductions defendants proposed for excessive attorney conferencing, the Court should reduce the remaining 199.5 block-billed hours by 22.5 percent  (eliminating 44.8 of the requested hours)— with a corresponding monetary reduction of $16,257 (at requested hourly rates).  If the Court does not reduce the excessive attorney conferencing hours, it should reduce all the block-billed hours by 22.5 percent (eliminating 146 of the hours)—with a corresponding monetary reduction of $53,039 (at requested hourly rates).

      **E.**      **Plaintiffs' Hourly Rates are Improperly Inflated**

Plaintiffs have requested inflated hourly rates that are not supported by the record.  The most probative evidence in the record of the market rate for experienced lawyers in the Boise market is the hourly rates actually charged by the declarants.  Plaintiffs' lead counsel, Ms. Ferguson, admits that she charges $250 to $300 per hour for her time.  Dkt. 113-3 ¶ 21.  Deborah Kristensen states that she charges $250 to $275 for her time.  Dkt. 113-14 ¶ 9.  Both of these lawyers have a wealth of experience in complex litigation.  Presumably, their rates reflect the fair market value for their services.

Despite her actual practice of charging $250-300 per hour, Ms. Ferguson seeks an enhanced fee of $400 per hour in this case.  The only justification for this upward adjustment is that she worked on a contingent basis.  The Supreme Court has held that the contingent nature of the attorney's engagement cannot be used to enhance her fee.  *City of Burlington v. Dague*, 505 U.S. 557 (1992); *see also Welch*, 480 F.3d at 947 (a "contingency cannot be used to justify a fee enhancement . . . or an inflated hourly rate") (citing *Cann v. Carpenters' Pension Trust Fund*,

989 F.2d 313, 318 (9th Cir. 1993), and *Davis v. City and County of San Francisco,* 976 F.2d 1536, 1549 (9th Cir.1992), *vacated in part on other grounds,* 984 F.2d 345 (1993)).  Ms. Ferguson should be compensated at her highest actual rate of $300, not at an improperly inflated rate.  Otherwise, she would receive a windfall, which the law does not permit.

Plaintiffs have offered no evidence concerning the actual billing rate of their other Idaho counsel, Mr. Durham.  Nor have plaintiffs offered any evidence of the rates actually charged by attorneys in Boise with experience similar to Mr. Durham's.  Presumably, that rate is below $250, because Mr. Durham is less experienced than Ms. Ferguson and Ms. Kristensen.  *Compare* Dkt. 113-12 ¶ 2 (Mr. Durham's 17 years' experience) *with* Dkt. 113-3 ¶ 2 (28 years for Ms. Ferguson) and Dkt. 113-14 ¶ 2 (24 years for Ms. Kristensen).  Mr. Durham's requested rate of $325 per hour should be reduced to a level no higher than $250, commensurate with his relative experience.

Plaintiffs are seeking fee awards for work performed by four NCLR attorneys: Mr. Minter, Mr. Stoll, Ms. Whelan, and Ms. Huling Delaye.  Although these attorneys' practices are based outside Idaho, plaintiffs are not seeking rates based on other markets.  They seek "rates consistent with those in the Boise legal market."  Dkt. 113-7 ¶ 21.  They seek the following hourly rates: Minter -- $400; Stoll -- $325; Whelan -- $275; and Huling Delaye -- $175.

Mr. Minter has 21 years' experience as a lawyer.  Dkt. 113-7 ¶ 3.  Mr. Stoll has 19.  *Id.* ¶ 21.  They have slightly more experience than Mr. Durham, but less than Ms. Ferguson or Ms. Kristensen.  Accordingly, in the Boise market, they would be fairly compensated at the high end of the ranges billed by Ms. Ferguson and Ms. Kristensen, $300 per hour.

Ms. Whelan has 13 years of litigation experience.  Dkt. 113-7 ¶ 21.  Plaintiffs have not offered evidence of the actual rates charged by Boise attorneys with 13 years' experience.  It stands to reason, however, that the Boise market rate for Ms. Whelan's services would be lower than $250 per hour.

MEMORANDUM IN RESPONSE TO MOTION FOR ATTORNEYS' FEES - 14

Ms. Huling Delaye has five years of litigation experience.  Dkt. 113-7 ¶ 21.  Plaintiffs have not offered evidence of the actual rates charged by Boise attorneys with five years' experience.  However, defendants Rich and Idaho do not object to her requested hourly rate.

If the reduced hourly rates are used, the requested fee award would be adjusted downward from $463,480 to $363,935—or 21.5%—before any downward adjustment of the hours plaintiffs request.[18]  If the reduced hourly rates are applied to properly adjusted hours as discussed above, the appropriate attorney fee recovery would be reduced to $203,435.[19]

### F.    Plaintiffs' Expense Recovery Should Exclude NCLR Attorneys' Travel-Related Costs

The NCLR claims $4,363.08 in expenses.  Dkt. 113-9 at 9.  Of the amount, $3,748.72 reflects expenses associated with Messrs. Minter's and Stoll's flights between San Francisco and Boise, ground transportation, hotel accommodations, and meals.  No reason existed for such travel; whatever consultations occurred here could have taken place by telephone or an internet-based meeting service, while the San Francisco counsel could have participated in the summary judgment motion hearing by telephone.  The requested expense recovery consequently should be reduced to $614.36.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[18]  A chart reflecting this calculation is attached as Exhibit L to the Zanzig Declaration (Dkt. 119-1).

[19]  A chart reflecting this calculation is attached as Exhibit M to the Zanzig Declaration (Dkt. 119-1).

## III.

## CONCLUSION

For the foregoing reasons, this Court should reject or substantially reduce the attorneys' fee award plaintiffs request.

Dated this 2nd day of July 2014.

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL


By: _____/s/_____
        W. SCOTT ZANZIG
        Deputy Attorney General

MEMORANDUM IN RESPONSE TO MOTION FOR ATTORNEYS' FEES - 16

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 2nd day of July 2014, I electronically filed the foregoing Memorandum in Response to Motion for Attorneys' Fees with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following Persons:

Deborah A. Ferguson
d@fergusonlawmediation.com

Craig Harrison Durham
craig@chdlawoffice.com

Shannon P. Minter
sminter@nclrights.org

Christopher F. Stoll
cstoll@nclrights.org

Thomas C. Perry
tom.perry@gov.idaho.gov

Cally A. Younger
cally.younger@gov.idaho.gov

_____/s/_____
W. SCOTT ZANZIG