UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SUSAN LATTA and TRACI EHLERS, LORI WATSEN and SHARENE WATSEN, SHELIA ROBERTSON and ANDREA ALTMAYER, AMBER BEIERLE and RACHAEL ROBERTSON,<br><br>Plaintiffs,<br><br>v.<br><br>C.L. "BUTCH" OTTER, as Governor of the State of Idaho, in his official capacity, and CHRISTOPHER RICH, as Recorder of Ada County, Idaho, in his official capacity,<br><br>Defendants,<br>and<br><br>STATE OF IDAHO,<br><br>Defendant-Intervenor. | Case No. 1:13-cv-00482-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court is Plaintiffs' Motion for Reasonable Attorneys' Fees and Expenses Through May 23, 2014 (Dkt. 113). Plaintiffs request $463,480.00 in attorney fees and $4,363.08 in litigation expenses. Defendant Christopher Rich and Defendant-Intervenor State of Idaho, joined by Defendant Governor Otter (Dkt. 120), oppose Plaintiffs' request in part, arguing for a reduced award of $203,435.00 in fees and $614.36 in expenses (Dkt. 119, *as amended by* 121). For reasons explained below, the

**MEMORANDUM DECISION AND ORDER - 1**

Court will order Defendants to pay to Plaintiffs $397,300.00 in attorney fees and $4,363.08 in expenses.

## BACKGROUND

Filed under 42 U.S.C. § 1983, this action involved a facial constitutional challenge to Idaho laws that defined marriage as the legal union between a man and a woman and prohibited the recognition of out-of-state marriages between two persons of the same sex. The Plaintiffs—two same-sex couples desiring to marry in Idaho, and two same-sex couples desiring to have their existing marriages recognized in Idaho—filed their Complaint for Declaratory and Injunctive Relief on November 8, 2013. The Complaint named as Defendants the Governor of Idaho, C.L. "Butch" Otter, and the Ada County Recorder, Christopher Rich. On December 11, 2013, the State of Idaho moved to intervene in the case. After considering the parties' briefs and oral argument on the matter, the Court allowed the State to intervene on January 21, 2014.

The case proceeded quickly on a legal track. All parties filed dispositive motions, which were fully briefed by April 4, 2014. One month later, on May 5, 2014, the Court heard oral argument on the dispositive motions. On May 13, 2014, the Court issued a Memorandum Decision and Order granting summary judgment in favor of the Plaintiffs. Governor Otter immediately moved for a stay of the Court's Order pending appeal. On May 14, 2014, the Court denied that motion and entered a Judgment for Plaintiffs, declaring that the challenged laws violate the Fourteenth Amendment to the Constitution of the United States and permanently enjoining their enforcement. The Defendants immediately appealed and sought a stay of the Court's Judgment from the United States

**MEMORANDUM DECISION AND ORDER - 2**

Court of Appeals for the Ninth Circuit. The Ninth Circuit granted a stay, which it later lifted effective October 15, 2014.[1]

On May 27, 2014, Plaintiffs filed the instant motion for attorney fees and costs. Recorder Rich and the State of Idaho responded on July 2, 2014, and Governor Otter joined their response on the same day. Plaintiffs filed their reply brief on July 28, 2014, and the matter is now ripe for a decision. Because the Court finds the facts and legal arguments are presented in the record and that the decisional process would not be significantly aided by oral argument, *see* Dist. Idaho Loc. Civ. R. 7.1, the Court enters the following disposition.

## DISPOSITION

In actions under 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b). Section 1988(b) also provides the Court discretion to award "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation omitted). "Congress enacted § 1988 specifically because it found that the private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process." *City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986). "In order to ensure that lawyers would be willing to represent persons with legitimate civil rights

---

[1]     As of this writing, the appeal is ongoing, and the Ninth Circuit has recalled and not reissued its mandate. However, the Ninth Circuit has held that district courts have continuing jurisdiction to award fees after an appeal on the merits has been taken. *Masalosalo by Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 957 (9th Cir. 1983).

**MEMORANDUM DECISION AND ORDER - 3**

grievances, Congress determined that it would be necessary to compensate lawyers for all time reasonably expended on a case." *Id*. at 578.

Here, Plaintiffs prevailed on the dispositive issues presented and obtained all the relief requested. There is no dispute that Plaintiffs are the prevailing parties and are therefore entitled to an award of reasonable attorney fees and litigation expenses. However, the Defendants dispute whether the amount of requested attorney fees and expenses is reasonable.

## 1.    Reasonable Attorney Fees

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "The product of this computation—the 'lodestar figure'—is a 'presumptively reasonable' fee under 42 U.S.C. § 1988." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). The Court may adjust the loadstar figure upward or downward based on factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975),[2] that are not subsumed in the loadstar calculation.[3]

---

[2]    *Kerr* lists the following factors: (1) the time and labor required; (2) the complexity of the case; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 526 F.2d at 70.

[3]    "Among the subsumed factors presumably taken into account in either the reasonable hours component or the reasonable rate component of the lodestar calculation are: (1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of

**MEMORANDUM DECISION AND ORDER - 4**

But the critical factor in determining the reasonableness of the fee is "the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (citing *Hensley*, 461 U.S. at 436). The lodestar figure may be "an excessive amount" for parties who achieve only limited success. *Id*. On the other hand, a party who achieves "excellent results" is entitled to "a fully compensatory fee." *Hensley*, 461 U.S. at 435.

The prevailing party has the burden of submitting evidence showing the claimed rates and hours expended on the litigation are reasonable. *Blum v. Stenson*, 465 U.S. 886, 897 (1984), *accord Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992). "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates*, 987 F.2d at 1397–98. With these principles in mind, the Court considers Plaintiffs' fee request.

## A.    *Reasonable Hourly Rates*

An hourly rate is reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 896 n.11; *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007). "[N]ormally the relevant legal community for determining the prevailing market rates for attorneys' fees is the community in which the forum is situated." *Gates*, 987 F.2d at 1405. Although the Court may look to prevailing rates outside the forum in

---

representation, . . . (4) the results obtained, and (5) the contingent nature of the fee agreement." *Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir.1996) (internal quotations and citations omitted).

certain circumstances, *id.*, Plaintiffs here request rates arguably consistent with those in the Boise, Idaho market.

Plaintiffs request fees for the work of six attorneys: Deborah Ferguson, Shannon Minter, Craig Durham, Christopher Stoll, Amy Whelan, and Jaime Huling Delaye. Each attorney agreed to represent Plaintiffs at no charge, and, in turn, Plaintiffs agreed that any awarded attorney fees would be paid to their counsel. In support of their request, Plaintiffs submitted the Declarations of Ferguson, Minter, Durham, attorney Lauren Scholnick, and attorney Debora Kristensen (Dkt. 113-3; 113-7; 113-12; 113-14; 113-15). Each declarant opines that the hourly rates requested for Plaintiffs' attorneys are reasonable for similar work performed by attorneys of comparable skill and experience in the Boise market. Defendants object to the hourly rates requested for all of Plaintiffs' attorneys, except Huling Delaye. They argue—but present no evidence to show—the remaining five attorneys' rates are inflated relative to Boise market rates for similarly experienced attorneys.

### (1)   *Deborah Ferguson*

Deborah Ferguson was Plaintiffs' lead counsel in this matter. She coordinated Plaintiffs' legal team; communicated extensively with Plaintiffs; contributed to pleadings, briefs, and supporting factual materials; and presented all oral arguments on Plaintiffs' behalf. Ferguson has 28 years of civil litigation experience, ranging from constitutional torts to environmental matters and medical malpractice defense. She has practiced law in Illinois and Idaho as both a private attorney and as a civil litigator for the United States Department of Justice. In addition to several other leadership positions in the Idaho legal

**MEMORANDUM DECISION AND ORDER - 6**

community, Ferguson is a former President and Commissioner of the Idaho State Bar. Although her hourly rate is $250 to $300 in non-contingency cases, Plaintiffs seek $400 per hour for Ferguson's work in this contingent fee case. Noting the fast pace of this litigation and the consequent need to turn away other fee paying matters, Ferguson opines that the higher "rate is reasonable given the exceptionally rare congruence of complexity, risk, and time demands of the case, as well as the degree of success achieved." (Dkt. 113-3 at 9.)

Defendants argue the "only justification for [Ferguson's requested $400 per hour rate] is that she worked on a contingent basis." (Dkt. 121 at 13.) Defendants quote the Ninth Circuit's decision in *Welch* for the proposition that "contingency cannot be used to justify a fee enhancement . . . or an inflated hourly rate." 480 F.3d at 947. But Plaintiffs expressly state that they "do not seek" an enhancement for Ferguson's or any other attorney's services. (Dkt. 113-1 at 11.) Rather, Plaintiffs' evidence demonstrates that they seek "fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." *Davis v. City & County of San Francisco*, 976 F.2d 1536, 1549 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993).

Debora Kristensen, a Boise attorney with 24 years of experience, notes "there is little encouragement for the private bar to prosecute these complex and demanding constitutional claims." (Dkt. 113-14 at 4.)  According to Kristensen, "$400 per hour is similar to what attorneys in Boise doing similar specialized litigation charge and is reasonable for prosecuting an action of this complexity and difficulty, dealing with civil

**MEMORANDUM DECISION AND ORDER - 7**

rights claims under the United States Constitution and the Idaho State Constitution." (*Id.* at 3–4.) In fact, earlier this year, the Court approved a $400 hourly rate for Boise-based lead counsel in a complex case involving claims under the Fair Housing Act and the Idaho and United States Constitutions. *Community House, Inc. v. City of Boise*, No. 1:05-cv-283-CWD, 2014 WL 1247758, at *6 (D. Idaho Mar. 25, 2014).

Additional factors support Ferguson's requested rate. *Welch* recognizes that "delay in payment" is "properly considered in arriving at a reasonable hourly rate." 480 F.3d at 947. In cases like this, prevailing counsel are not paid as legal services are performed, yet "their expenses of doing business continue and must be met." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283 (1989). Due to the demands of this case, Ferguson attests that she turned away other fee-paying matters and had less time available to develop her practice. (Dkt. 113-3 at 7.) These opportunity costs, coupled with the reality of delayed payment, underscore the undesirability of cases like this one—particularly for a small firm like Ferguson's.

Defendants do not address any of these considerations. Rather, they simply presume Ferguson's usual hourly rate should apply to the unique circumstances of this case. The Court disagrees. While Ferguson's requested rate is at the high end of the range for experienced complex litigation attorneys in the Boise market, the factors discussed above establish that $400 per hour is a reasonable hourly rate for her time in this matter.

### (2)   *Shannon Minter*

San Francisco-based attorney Shannon Minter served as co-counsel, assisting with Plaintiffs' overall case strategy as well as drafting pleadings and briefs. Minter has

**MEMORANDUM DECISION AND ORDER - 8**

worked at the National Center for Lesbian Rights (NCLR) for 21 years, serving as NCLR's Legal Director since 2000. He has litigated high-profile LGBT rights cases across the country, authored treatises and publications on legal issues related to the LGBT community, and received a long list of honors for his efforts. Plaintiffs request $400 per hour for Minter's services, "consistent with [rates] in the Boise legal market," as opposed to the considerably higher rates that may prevail in markets such as San Francisco or Washington D.C.

Defendants argue Minter should be compensated at $300 per hour because he has slightly less experience than Ferguson. This argument ignores the nature of Minter's legal experience, which includes two decades of impressive accomplishments in a contentious area of civil rights litigation. This specialized experience more than compensates for Minter's somewhat shorter career. The same factors that support Ferguson's rate—the complexity of the case, its undesirability relative to more typical legal work, the delay in payment, and rates allowed in similar cases—lead the Court to find that a rate of $400 per hour is reasonable for Minter.

### (3)  *Craig Durham*

Boise attorney Craig Durham also served as co-counsel. Over the course of his 17-year legal career, Durham has specialized in appellate criminal defense and prisoner litigation under 42 U.S.C. § 1983, with a particular focus on death penalty cases. In May of 2013, Durham opened a solo practice in Boise after nearly 10 years of service as a staff attorney in the Prisoner Litigation Unit of this Court. Durham's solo practice concentrates on civil rights, discrimination, and criminal defense.

Durham was asked to join Plaintiffs' litigation team in part because of his knowledge of civil rights law and federal practice. In this case, Durham drafted portions of Plaintiffs' briefs, was involved with strategy and decisionmaking, and assisted Ferguson in her preparation for oral argument. Similar to Ferguson, Durham turned away other fee-paying matters because of the need to focus on this fast-moving case. Plaintiffs request $325 per hour for his services.

Defendants assert Durham's rate should be no higher than $250 per hour to account for his "relative experience" in light of Ferguson's and Kristensen's usual hourly rates. This argument again conflates the prevailing rates for hourly legal work with the reasonable rate for a complex case of this nature. Moreover, Defendants present no evidence to suggest Durham's requested rate is unreasonable. Consequently, the Court has no reason to doubt attorney Lauren Scholnick's declaration that all of Plaintiffs' requested hourly rates "are within the range of market rates charged by attorneys of equivalent experience, skill, and expertise for comparable work in this community." (Dkt. 113-15 at 4.)

The Court also is mindful that it recently approved a $325 hourly rate for attorney Vaughn Fisher, who served as second-chair counsel in a similarly complex civil rights case. *Community House*, 2014 WL 1247758, at *6. Like Fisher, Durham has 17 years of legal experience and particular expertise in civil rights litigation. *See id*. Defendants do not mention, let alone attempt to distinguish, *Community House*. Considering Durham's specialized experience and the demands of this case, the Court finds the requested $325 hourly rate for his work reasonable.

**MEMORANDUM DECISION AND ORDER - 10**

### (4)    *Christopher Stoll*

Plaintiffs also seek $325 per hour for the services of senior NCLR staff attorney Christopher Stoll. In 1994, Stoll graduated *magna cum laude* from Harvard Law School, where he served as Supreme Court Editor for the *Harvard Law Review*. Over his 19-year legal career, Stoll has served as a law clerk in the Ninth Circuit, has worked in the litigation department of international law firm Heller Ehrman LLP, and, since joining the NCLR in 2008, has litigated challenges to same-sex marriage bans in at least six states. During his time at NCLR, Stoll also has litigated employment, discrimination, family, and constitutional law matters across the country. In this case, Stoll helped Ferguson prepare for oral argument and assisted with research, brief writing, and litigation strategy.

Defendants argue $300 per hour would be fair compensation for Stoll because he has more experience than Durham. Curiously, Defendants claim Minter and Stoll are both entitled to $300 per hour, yet Durham is entitled to $250 at most. But Minter has two years more experience than Stoll and four years more experience than Durham. If two years is enough to entitle Stoll to $50 more per hour than Durham, Defendants' logic would dictate that Minter is entitled to $100 more per hour than Durham. The fact that Defendants make no effort to explain this inconsistency shows the arbitrariness of their position. Although Stoll's longer and more directly applicable experience might entitle him to a somewhat higher rate than Durham, the Court finds Stoll's requested rate of $325 per hour reasonable.

**MEMORANDUM DECISION AND ORDER - 11**

### (5)   *Amy Whelan*

Plaintiffs seek $275 per hour for senior NCLR staff attorney Amy Whelan. Throughout her 13-year legal career, Whelan's practice has focused on complex civil litigation in the areas of civil rights, prisoners' rights, and employment. Similar to the other NCLR attorneys in this case, Whelan has worked on challenges to same-sex marriage bans in several states. Defendants argue Whelan's rate should be less than $250 per hour because Plaintiffs have not offered evidence of actual rates charged by similarly experienced Boise attorneys.

This argument may have found traction had it been supported by evidence. But argument alone is insufficient to rebut Plaintiffs' showing. *See Gates*, 987 F.2d at 1397–98. As noted above, Scholnick, who practices in Boise, opined that the rate sought for Whelan's services is "within the range of market rates" for comparable work by similarly skilled and experienced attorneys "in this community." (Dkt. 113-15 at 4.) Scholnick's opinion also finds support in this Court's recent decision in *Community House*, where Boise attorneys with 14 and 15 years of experience qualified for rates of $275 per hour. 2014 WL 1247758, at *7. Thus, the Court finds Whelan's requested rate reasonable.

### (6)   *Jaime Huling Delaye*

Plaintiffs request, and Defendants do not oppose, a rate of $175 per hour for Jaime Huling Delaye's services. Huling Delaye is a staff attorney for the NCLR with general litigation, judicial clerkship, and LGBT advocacy experience. The Court finds Huling Delaye's requested rate reasonable, considering her five years of legal experience, the complexity of this case, and the rates awarded to similarly experienced attorneys in

**MEMORANDUM DECISION AND ORDER - 12**

similar cases. *See Community House*, 2014 WL 1247758, at *7 (finding $175 per hour reasonable for an attorney with five years' specialized experience relevant to the case).

### B.    *Hours Reasonably Expended*

The next step in the lodestar analysis is to determine how many hours each attorney "reasonably expended in pursuit of the ultimate result achieved." *Hensley*, 461 U.S. at 431. Here too, the prevailing party has the burden of submitting time records justifying the hours claimed. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *as amended by* 808 F.2d 1373 (9th Cir. 1987).  "Those hours may be reduced by the court where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary." *Id.* (citing *Hensley*, 461 U.S. at 433–34). Put differently, "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Hensley*, 461 U.S. at 434 (quotation omitted). But the Court's discretion to reduce claimed hours is not unbounded, nor does it provide an opportunity for second-guessing when counsel exercises sound billing judgment. "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

Plaintiffs seek fees for 1,289.3 hours expended on this litigation through May 23, 2014.[4]  Detailed time records for each attorney substantiate this request. In addition,

---

[4]     Plaintiffs note that they plan to submit supplemental time records for any time incurred after May 23, 2014. (Dkt. 113-3 at 10.)

**MEMORANDUM DECISION AND ORDER - 13**

Ferguson, Minter, and Durham each attest that all hours claimed were reasonably and necessarily incurred in this case. In response, Defendants argue the claimed hours are unreasonable, considering the "duration of the case and the limited tasks involved." (Dkt. 121 at 2.) Defendants focus their objections on three categories of claimed hours: (1) time spent unsuccessfully opposing two procedural motions; (2) excessive time spent on specific litigation tasks; and (3) hours that were improperly "block billed."

### (1)     *Procedural Motions*

Some of Defendants' objections are well taken. In fact, Plaintiffs concede that they are not entitled to fees in this proceeding for 28.3 requested hours spent opposing Defendants' motions for a stay in the Ninth Circuit. These hours will be deducted from Plaintiffs' fee request.

Defendants also claim Plaintiffs are not entitled to fees for 60.7 hours expended on their unsuccessful opposition to the State of Idaho's motion to intervene in the case. However, the Ninth Circuit rejected essentially the same argument more than 20 years ago in *Cabrales v. County of Los Angeles*, 935 F.2d 1050 (9th Cir. 1991). There, the court observed:

> Rare, indeed, is the litigant who doesn't lose some skirmishes on the way to winning the war. Lawsuits usually involve many reasonably disputed issues and a lawyer who takes on only those battles he is certain of winning is probably not serving his client vigorously enough; losing is part of winning. The County would have us scalpel out attorney's fees for every setback, no matter how temporary, regardless of its relationship to the ultimate disposition of the case. This makes little sense.

**MEMORANDUM DECISION AND ORDER - 14**

*Cabrales*, 935 F.2d at 1053. Because Plaintiffs' loss on the State's motion to intervene "was simply a temporary setback on the way to a complete victory," the Court finds the 60.7 hours spent opposing the motion were reasonably expended. *Id.* at 1052.

### (2)   *Time for Specific Tasks*

Defendants next claim Plaintiffs' counsel spent an excessive amount of time communicating about the case, briefing dispositive motions, preparing for oral argument, and drafting the instant motion for fees. The essence of this excessiveness argument is that the case was neither factually nor procedurally complex, and thus did not reasonably require the amount of time Plaintiffs' counsel devoted to it. The Court cannot accept Defendants' premise. Whatever this case lacked in procedural complications or disputed issues of material fact, it surely made up in legal complexity. After all, the case involved constitutional issues of first impression not only in Idaho, but in all district courts in the Ninth Circuit.[5]

Faced with this challenging legal landscape, the parties saw fit to file hundreds of pages in briefs on three dispositive motions. Attached to, or referenced by, the briefs were thousands of pages of declarations, reports, news articles, legislative history, and caselaw.[6] As the case proceeded from briefing to oral argument to final judgment, district

---

[5]      Among the novel issues presented: (1) the applicability of *Baker v. Nelson* in light of the Supreme Court's decisions in *Windsor* and other cases; (2) the applicability of *Windsor* to Plaintiffs' Fourteenth Amendment challenge; and (3) whether and how the Ninth Circuit's decision in *SmithKline* affected the standard of review for Plaintiffs' Equal Protection claim.

[6]      For instance, Plaintiffs supported their motion for summary judgment with the declarations of all eight Plaintiffs as well as the Declaration of Dr. Michael E. Lamb. (Dkt. 47 to 55.) Plaintiffs' counsel, and Ferguson in particular, spent a significant amount of time developing these declarations. (Dkt. 113-5, 113-9.)

**MEMORANDUM DECISION AND ORDER - 15**

courts across the country issued decision after decision on the very issues presented here. Moreover, the Ninth Circuit decided a key case—*SmithKline*—in the midst of the briefing. Anyone would need a significant amount of time just to read and digest the record, not to mention the formidable body of law underlying it. Yet time was short in this case—it proceeded from Complaint to Judgment in little over six months. Simply put, the case was neither easy nor ordinary.

It is therefore not surprising that Plaintiffs employed a team of experienced attorneys to divvy up the many legal tasks. It is equally unsurprising that this team of attorneys would need to communicate with one another frequently. According to Defendants, however, Plaintiffs' counsel communicated too frequently, billing 177.5 hours for communications and another 171 hours for communications blocked with other tasks—a total of 348.5 hours spent, at least in part, on attorney conferencing. Defendants assure the Court that it would be reasonable to cut this total in half.

Despite the simplistic appeal of this "meat-axe approach," *Gates*, 987 F.2d at 1399 (quoting *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992)), the Ninth Circuit has refused to sustain a similarly "Draconian" 50 percent reduction absent a "clear explanation." *Moreno*, 534 F.3d at 1113. It is plausible that Plaintiffs' counsel communicated more than necessary. But the Court does not find anything *per se* unreasonable about a team of attorneys regularly communicating over the course of such a complex, fast-moving case. *See M.L. v. Fed. Way Sch. Dist.*, 401 F.Supp.2d 1158, 1169-70 (W.D. Wash. 2005) ("[W]here two attorneys may be working cooperatively and simultaneously on the same matter, they could well be progressing at twice the rate of

**MEMORANDUM DECISION AND ORDER - 16**

speed as a single attorney working alone for the same number of hours."). Moreover, Defendants do not provide a basis for distinguishing between necessary and unnecessary attorney communications. Thus, the Court is without a clear explanation to justify Defendants' proposed reduction for excessive communications.

Defendants propose a similarly imprecise 25 percent cut to the 522.3 hours Plaintiffs' counsel spent on dispositive motions. Such a reduction would be warranted if the Court "reasonably concludes that preparation of the motion 'demanded little of counsel's time.'" *Welch*, 480 F.3d at 950 (quoting *Webb v. Sloan*, 330 F.3d 1158, 1170 (9th Cir. 2003)). According to Defendants, Plaintiffs' counsel had significant experience in similar cases such that they could simply "recycle" their old work. (Dkt. 121 at 7.) Indeed, it appears Plaintiffs' counsel did just that in small part. On November 29, 2013, the NCLR filed an amicus brief in the case challenging Utah's same-sex marriage ban. On February 18, 2014, Plaintiffs filed their 60-page memorandum in support of summary judgment, which contains a few passages virtually identical to portions of the NCLR's amicus brief. *Compare* Pls.' Mem. Supp. Summ. J. (Dkt. 59 at 54–58) *with* Amicus Br. (Dkt. 119-15 at 18–24).

It may have demanded little time to recycle a few pages of old language, but that does not mean the remainder of Plaintiffs' four briefs were ready-made. Counsel's decision to copy-paste a relatively small part of one brief does not, by itself, justify an untargeted 25 percent reduction. Further, Defendants offer no evidence to support targeted reductions for specific tasks performed by particular attorneys. Nor do Defendants proffer the time they devoted to the dispositive motions as a basis for

**MEMORANDUM DECISION AND ORDER - 17**

comparison. Here, again, there is no clear explanation to back up Defendants' suggested reduction.

Next, Defendants challenge the time Plaintiffs' counsel spent preparing for oral argument. They urge the Court to award 40 hours at most instead of the 137.6 hours Plaintiffs seek for counsel's oral argument preparation and attendance. Ferguson billed 81.7 hours of this time for preparations ahead of her 45-minute oral argument on the parties' dispositive motions. The remainder, 55.9 hours, was time Huling Delaye, Minter, Stoll, and Durham spent assisting with those preparations. These totals include time the attorneys spent in moot court rehearsals and hours they billed on the day of oral argument.

"[C]ourts ought to examine with skepticism claims that several lawyers were needed to perform a task, and should deny compensation for such needless duplication as when three lawyers appear for a hearing when one would do." *Democratic Party of Wash. v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004). Even so, "[p]articipation of more than one attorney does not necessarily amount to unnecessary duplication of effort." *Id.* at 1287. Applying these principles, this Court has previously allowed over 150 hours for one attorney's time to prepare for a 30-minute oral argument—and that total did not include the Court's allowance for additional time spent in moot court practice. *Hash v. United States*, No. 1:99-cv-324-MHW, 2012 WL 1252624, at *14–16 (D. Idaho Apr. 13, 2012) (calculating reasonable fees in a complex Fifth Amendment takings case). Here, by contrast, five attorneys needed substantially less time to fully prepare lead counsel Ferguson for a 45-minute argument. The Court has scrutinized Plaintiffs' counsel's

preparation time and nonetheless finds it reasonable, especially given the gravity of this case. *See Nadarajah v. Holder*, 569 F.3d 906, 924–25 (9th Cir. 2009) (finding 40 hours of preparation for a 15-minute oral argument to be reasonable in an immigration case).

Defendants also claim Plaintiffs' counsel spent too much time preparing Plaintiffs' motion for attorney fees. On this point, the Court agrees. The applicable law is well-settled, and the most important supporting documents—billing records and statements of counsel's experience—should have been readily available. Plaintiffs' litigation team has extensive experience with § 1983 litigation, which should have reduced the time necessary to prepare the motion. But, all told, Ferguson, Whelan, and Durham billed 77.7 hours for work related to the motion.[7]

It may be true that "lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee." *Moreno*, 534 F.3d at 1112. But there was no contingency when counsel billed most of the time for Plaintiffs' fee motion; they had already prevailed.

Even so, Ferguson spent 27.6 hours on the fee motion, mostly conferencing with co-counsel, reviewing billing records, and preparing declarations. Although the Court accepts that a limited amount of this time was necessary for Ferguson to exercise her

---

[7]    This total does not include time spent reviewing Defendants' response or preparing Plaintiffs' reply brief in support of the fee petition. It also excludes 0.4 hours Ferguson billed on May 20, 2014 for "Review[ing] Court's order granting emergency request for a stay pending appeal, advised Plaintiffs of same and briefing schedule; conferred with co-counsel." (Dkt. 113-6 at 2.) This task appears related to proceedings in the Ninth Circuit, (*See* Dkt. 112), and Plaintiffs concede that such tasks are non-compensable in this Court.

**MEMORANDUM DECISION AND ORDER - 19**

billing judgment, most of these tasks could be accomplished by clerical staff at a fraction of the cost. Likewise, Whelan spent 31.1 hours preparing the documentation to support the fee petition. That documentation consists of three declarations, four resumes, billing records, and a list of litigation expenses. (Dkt. 113-7 to -11, 113-14 to -15.) Painstaking though it may be, assembling these documents is not complex legal work. In fact, it barely qualifies as legal work. By contrast, Durham needed only 19 hours to prepare both his declaration and the brief in support of the fee petition. (Dkt. 113-13 at 4.)

The Court finds that 40 hours at most is a reasonable amount of time for a fee motion of this complexity. The Court also finds Ferguson and Whelan billed excessive hours for their work on the motion. In addition to the 19 hours recorded by Durham, Plaintiffs will be awarded 10.5 hours for time spent by each Ferguson and Whelan. The Court will not entertain another request for fees incurred in litigating this fee motion.

### (3)   *Block-billed Time*

The lion's share of Defendants' objections pertain to so-called block billing. "'Block billing' is 'the time-keeping method by which each lawyer . . . enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'" *Welch*, 480 F.3d at 945 n.2 (quoting *Harold Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1554 n.15 (10th Cir. 1996)). The practice is disfavored because it obscures the time spent on discrete legal tasks, frustrating the Court's analysis of whether the time was reasonably spent. *Id*. at 948.

The Court agrees with Defendants that Plaintiffs' counsel engaged in some improper block-billing. The billing records show that Plaintiffs' counsel frequently

lumped time spent drafting or reviewing documents together with time spent emailing their clients or conferring with co-counsel. For instance, Ferguson documented 8.3 hours on February 13, 2014, as follows: "Revisions to declarations, emails with clients re same, draft Statement of Facts, revisions to same, confer with co-counsel, research Idaho tax implications." (Dkt. 113-5 at 9.) This and similar entries make it impossible to determine whether a reasonable amount of time was spent on each of the several tasks mentioned. Thus, a reduction for block billing is warranted.

The difficulty comes with quantifying the extent of the problem. Defendants again propose a meat-axe solution—reduce the block-billed hours by "20 to 25" percent. (Dkt. 121 at 12.) But when the Court looks to Defendants' proof—a 13-page tally of the 239 billing entries arguably constituting "all requested block billings" (Dkt. 119-12)—it finds a chart replete with errors.[8] It would take a "green-eyeshade accountant" to make sense of this filing. *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011).

Mercifully, "trial courts need not, and indeed should not," moonlight in that profession to resolve fee petitions. *Id.* "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Id.* Accordingly, the Court will impose a 10 percent reduction to Plaintiffs' counsel's requested hours in addition to the reductions discussed above. *See Moreno*, 534 F.3d at 1112 ("[T]he district court can

---

[8]     For example, Defendants represent that "DF" (Deborah Ferguson) charged 2.3 hours on October 26, 2013, (Dkt. 119-12 at 2), yet a review of Ferguson's billing records shows she did not bill any time on that day. (Dkt. 113-5 at 3.) Instead, Durham performed the 2.3-hour task indicated on Defendants' chart. (Dkt. 113-13 at 2.) Ten such errors appear on the first page of the chart alone, and more appear on each successive page. Suffice it to say, these errors affect the dollar value of the alleged block billing, because Plaintiffs' counsel billed their time at different rates. Thus, Defendants' chart is unreliable.

impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise

of discretion and without a more specific explanation.").

### (4)   *Summary of Reductions*

The following table summarizes the Court's reductions to Plaintiffs' requested

hours.

| Attorney | Hours Claimed (Dkt. 113-2) | Reduction for Ninth Circuit Tasks | Reduction for Fee Motion | 10 Percent Discretionary Reduction[9] | Hours Reasonably Expended |
|---|---|---|---|---|---|
| Ferguson | 706.2 | (10) | (17.1) | (67.9) | 611.2 |
| Minter | 119.3 | (0.9) | 0 | (11.8) | 106.6 |
| Durham | 152.4 | (1.5) | 0 | (15.1) | 135.8 |
| Stoll | 139.9 | (12.8) | 0 | (12.7) | 114.4 |
| Whelan | 82.7 | 0 | (20.6) | (6.2) | 55.9 |
| Huling Delaye | 88.8 | (3.1) | 0 | (8.6) | 77.1 |
| **Totals** | **1,289.3** | **(28.3)** | **(37.7)** | **(122.3)** | **1,101** |

### C.   *Lodestar*

As shown in the table below, the lodestar figure for attorney fees based on hourly

rates and hours reasonably expended is $397,300.00.

| Attorney | Reasonable Rate | Hours Reasonably Expended | Lodestar |
|---|---|---|---|
| Ferguson | $400 | 611.2 | $244,480.00 |
| Minter | $400 | 106.6 | $42,640.00 |
| Durham | $325 | 135.8 | $44,135.00 |
| Stoll | $325 | 114.4 | $37,180.00 |
| Whelan | $275 | 55.9 | $15,372.50 |
| Huling Delaye | $175 | 77.1 | $13,492.50 |
| | | **Total** | **$397,300.00** |

---

[9]     These reductions are calculated as follows: Ferguson (706.2 – 10 – 17.1) x 0.1 = 67.9;
Minter (119.3 – 0.9) x 0.1 = 11.8; Durham (152.4 – 1.5) x 0.1 = 15.1; Stoll (139.9 – 12.8) x 0.1 =
12.7; Whelan (82.7 – 20.6) x 0.1 = 6.2; Huling Delaye (88.8 – 3.1) x 0.1 = 8.6.

The Court finds Plaintiffs achieved excellent results in this litigation, entitling them to a fee equal to this presumptively reasonable lodestar amount. *See Hensley*, 461 U.S. at 435.

**2.      Litigation Expenses**

Section 1988 authorizes the Court to award "out-of-pocket expenses incurred by an attorney which would normally be charged to a fee paying client . . . ." *Chalmers v. Los Angeles*, 796 F.2d 1205, 1216 n.7 (9th Cir. 1986) *as amended by* 808 F.2d 1373 (9th Cir. 1987). Here, Plaintiffs seek $4,363.08 in litigation expenses, the bulk of which are expenses Minter and Stoll incurred traveling from San Francisco to Boise for the hearing on dispositive motions. (Dkt. 113-9 at 9.) Defendants object to the travel expenses, arguing that San Francisco counsel could have participated in the hearing by telephone. While that is true, the Court finds it reasonable for counsel of record to attend such an important hearing in person.[10] More to the point, the Court finds the requested expenses are the kind which normally would be charged to a fee-paying client. Defendants offer no evidence to the contrary. Accordingly, the Court will award Plaintiffs the requested $4,363.08 in litigation expenses.

**3.      Post-Judgment Interest**

Plaintiffs request that the Court apply the prevailing post-judgment interest rate to the award of fees and expenses "from the date of the Court's Judgment on May 14,

---

[10]      On the other hand, Plaintiffs' out-of-state counsel appeared by telephone when the Court heard oral argument on the State of Idaho's motion to intervene. It is also noteworthy that the Court has already found compensable the time Minter and Stoll billed on the few the days they were working in Boise for their Idaho clients.

**MEMORANDUM DECISION AND ORDER - 23**

2014." (Dkt. 122 at 10.)  Under 28 U.S.C. § 1961(a), post-judgment interest is allowed on money judgments in civil cases "from the date of the entry of the judgment." This statute applies to attorney fee awards under § 1988, and the interest accrues "from the date that entitlement to fees is secured . . . ." *Friend v. Kolodzieczak*, 72 F.3d 1386, 1391–92 (9th Cir. 1995). In *Friend*, the Ninth Circuit affirmed an award of post-judgment interest from the date on which the district court first entered its order on attorney fees related to the litigation on the merits. *Id.*  Thus, interest accrues from the date of this Order, and not, as Plaintiffs request, the date of the Court's Judgment on the merits. The applicable post-judgment interest rate is 0.20 percent per annum.[11]

## ORDER

### NOW THEREFORE IT IS HEREBY ORDERED:

(1)     Plaintiffs' Motion for Reasonable Attorneys' Fees and Expenses Through May 23, 2014 (Dkt. 113) is **GRANTED IN PART AND DENIED IN PART**.

(2)     Plaintiffs are awarded $397,300.00 in attorney fees and $4,363.08 in non-taxable litigation expenses pursuant to 42 U.S.C. § 1988.

(3)     The foregoing amounts shall be paid with interest at the rate of 0.20 percent per annum from the date of this Order.

Dated: **December 19, 2014**

Honorable Candy W. Dale
United States Magistrate Judge

---

[11]     Bd. of Govs. of the Fed. Res. Sys., December 15, 2014 Selected Interest Rates (Weekly) – H.15, *available at* http://www.federalreserve.gov/releases/h15/.